# 24-2504

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆◆

IN RE: KWOK

*Debtor,*

MEI GUO,

*Counter-Defendant-Appellant,*

HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC,

*Plaintiff-Counter-Defendant-Appellant,*

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF FOR COUNTER-DEFENDANT-APPELLANT, MEI GUO, AND PLAINTIFF-COUNTER-DEFENDANT-APPELLANT, HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC

STEPHEN M. KINDSETH
JAMES M. MORIARTY
DANIEL A. BYRD
ZEISLER & ZEISLER, P.C.
10 Middle Street 15th Floor
Bridgeport, Connecticut 06604
(203) 368-4234

*Attorneys for Counter-Defendant-
Appellant and Plaintiff-Counter-
Defendant-Appellant*

—against—

LUC A. DESPINS, CHAPTER 11 TRUSTEE,

*Defendant-Counter-Claimant-Appellee,*

UNITED STATES TRUSTEE,

*Trustee.*

# CORPORATE DISCLOSURE STATEMENT

## *In re: Kwok*, No. 24-2504

Pursuant to Federal Rule of Appellate Procedure 26.1, appellant HK International Funds Investments (USA) Limited, LLC by and through its undersigned counsel of record, makes the following disclosure:

HK International Funds Investments (USA) Limited, LLC has no parent corporation, and no publicly held company owns 10% or more of its stock.

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................... iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................4

STATEMENT OF THE CASE....................................................................5

    A.    HK USA and the Lady May ........................................................5

    B.    The Individual Debtor's New York Action and Contempt Hearing..............6

    C.    The Contempt Order.....................................................................8

    D.    The Bankruptcy Proceedings and Lady May Stipulation ...........9

    E.    The Trustee's Counterclaims .....................................................11

    F.    The First Summary Judgment Order ..........................................12

    G.    The Second Summary Judgment Decision and Order ...............13

    H.    The District Court Appeal ..........................................................14

SUMMARY OF ARGUMENT...................................................................14

STANDARD OF REVIEW .......................................................................16

ARGUMENT .............................................................................................17

    I.    Collateral Estoppel Does Not Preclude the HK Parties from Litigating Ownership of the Lady May. ..................................17

        A.    The Individual Debtor's Sole Ownership of the Lady May was not Necessarily Determined by the Contempt Order. ...............................17

        B.    The Individual Debtor and HK Parties Were Not in Privity at the Contempt Hearing. ...............................................21

    II.    The Trustee Lacks Standing to Assert a Reverse Veil-Piercing Claim. ......25

        A.    The Trustee Lacks Standing to Assert an Insider Reverse Veil-Piercing Claim Standing in the Shoes of the Individual Debtor. ...............26

        B.    The Trustee Lacks Standing to Assert an Outsider Reverse Veil-Piercing Claim Standing in the Shoes of the Individual Debtor's Creditors. ..................................32

    III.    Reverse Veil Piercing Only Applies Based on the Liability of the Owner of the Entity Sought to be Pierced. ..........................40

    IV.    The Trustee's Reverse Veil Piercing Claim Raised Numerous Genuine Issues of Material Fact that Precluded Summary Judgment.................42

ii

A.    The Traditional Alter Ego Factors Raise Genuine Issues of Material Fact. ...................................................................................44

B.    The Fraud and Similar Injustice Factors Raise Genuine Issues of Material Fact. ...................................................................................50

C.    The Legitimate Expectations of HK USA's Owner and Creditor Raise Genuine Issues of Material Fact............................................51

D.    The Public Convenience Factor Raises Genuine Issues of Material Fact. ...................................................................................56

CONCLUSION ..................................................................................57

# TABLE OF AUTHORITIES

## Cases

*ALT Hotel, LLC v. Diamondrock Allerton Owner, LLC (In re ALT Hotel, LLC),*
479 B.R. 781 (Bankr. N.D. Ill.) .................................................................29

*Anderson v. Credit One Bank, N.A. (In re Anderson),*
884 F.3d 382 (2d Cir. 2018)......................................................................16

*Bowers v. Connecticut Nat'l Bank,*
847 F.2d 1019 (2d Cir. 1988).....................................................................3

*Buechel v. Bain,*
97 N.Y.2d 295 (2001) ......................................................................... 21, 22

*Canney v. Merchs. Bank (in Re Frazer),*
284 F.3d 362 (2d Cir. 2002).....................................................................33

*Caplin v. Marine Midland Grace Trust Co.,*
406 U.S. 416 (1972) .......................................................................... 34, 38

*Comi v. Breslin & Breslin,*
257 A.D.2d 754, 683 N.Y.S.2d 345 (3d Dept 1999)...............................24

*Conway v. Silesian-American Corp.,*
186 F.2d 201 (2d Cir. 1950).....................................................................49

*Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC
Investors, LLC),*
524 B.R. 62 (Bankr. D. Del. 2015)..........................................................17

*Fleetwood Fin. v. Walter J. Dowd, Inc.,*
2016 WL 11546917 (N.Y. Sup. Ct. Sept. 14, 2016) ...............................19

*Geron v. Seyfarth Shaw LLP (In re Thelen LLP),*
736 F.3d 213 (2d Cir. 2013).....................................................................28

*Globe Surgical Supply v. GEICO Ins. Co.,*
59 A.D.3d 129, 871 N.Y.S.2d 263 (2d Dept 2008) .................................24

*Hirsch v. Arthur Andersen & Co.,*
72 F.3d 1085 (2d Cir. 1995)............................................................... 27, 30

*In re Annette I.,*
34 A.D.3d 479, 823 N.Y.S.2d 542 (2d Dept 2006) .................................24

*In re Blackwood Assocs., L.P.,*
153 F.3d 61 (2d Cir. 1998).......................................................................16

*In re Christian Life Center,*
921 F.2d 1370 (9th Cir. 1987)....................................................................3

*In re Dana Corp.,*
574 F.3d 129 (2d Cir. 2009)............................................................... 42, 43

*In re Houston,*
409 B.R. 799 (Bankr. D.S.C. 2009)..........................................................34

iv

*In re Kaiser*,
   722 F.2d 1574 (2d Cir. 1983)........................................................................51

*In re Ozark Restaurant Equipment Co.*,
   816 F.2d 1222 (8th Cir. 1987)........................................................... 34, 35, 36

*In re United States Lines, Inc.*,
   197 F.3d 631 (2d Cir. 1999)..........................................................................16

*Johnson v. Watkins*,
   101 F.3d 792 (2d Cir. 1996)...........................................................................17

*Kirschner v. Large S'holders (In re Tribute Co. Fraudulent Conveyance Litig.)*,
   10 F.4th 147 (2d Cir. 2021)............................................................................30

*Litchfield Asset Mgmt. Corp. v. Howell*,
   799 A.2d 298, 70 Conn. App. 133 (2002) (Conn. App. Ct. 2002) .......................41

*Lugo v. Torres*,
   174 A.D.3d 592, 107 N.Y.S.3d 311 (2d Dept 2019)..........................................25

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
   251 A.3d 694 (Del. Ch. 2021) ................................................................. passim

*Marrese v. American Academy of Orthopedic Surgeons*,
   470 U.S. 373 (1985) .....................................................................................17

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280 (2d Cir. 2002)...........................................................................42

*McCormick v. Axelrod*,
   59 N.Y.2d 574, *amended*, 60 N.Y.2d 652 (1983) ...............................................19

*Mediators, Inc. v. Manney (In re Mediators, Inc.)*,
   105 F.3d 822 (2d Cir. 1997)...........................................................................27

*Molino v. Cty. of Putnam*,
   29 N.Y.2d 44 (1971) ....................................................................................24

*Parmalat Capital Fin. V. Bank of Am. Corp.*,
   412 Fed. Appx. 325 (2d Cir. 2011)..................................................................31

*Picard v. JPMorgan Chase & Co.*,
   460 B.R. 84 (S.D.N.Y. 2011) ................................................................... 33, 35

*Picard v. JPMorgan Chase Bank & Co (In re Bernard L. Madoff Inv. Sec. LLC)*,
   721 F.3d 54 (2d Cir. 2013)..................................................................27, 38, 39

*R.B. Ventures Ltd. v. Shane*,
   112 F.3d 54 (2d Cir. 1997)...........................................................................43

*Schwartz v. Public Adm'r*,
   24 N.Y.2d 65 (1969) ....................................................................................17

*SEC v. Monarch Funding Corp.*,
   192 F.3d 295 (2d Cir. 1999)...........................................................................16

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991)................................................................27, 32, 38

v

*Sky Cable, LLC v. DIRECTV, Inc.*,
  886 F.3d 375 (4th Cir. 2018)...................................................... 40, 41
*Slocum on Behalf of Nathan "A" v. Joseph "B"*,
  183 A.D.2d 102, 588 N.Y.S.2d 930 (3d Dept 1992) ............................................23
*St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 8
  84 F.2d 688 (2d Cir. 1989)...................................................... 35, 36, 37, 38
*Stadtmauer v. Tulis (In re Nordlicht)*,
  115 F.4th 90 (2d Cir. 2024)..........................................................31
*Stewart v. Wilmington Trust SP Servs.*,
  112 A.3d 271 (Del. Ch. 2015) .........................................................30
*Titan Real Estate Ventures, LLC. M.J.C.C. Realty L.P. (In re Flanagan)*,
  415 B.R. 29 (D. Conn. 2009)...................................................... 30, 31
*Universitas Educ., LLC v. Benistar*,
  2021 U.S. Dist. LEXIS 47804 (D. Conn. Mar. 15, 2021) ...................................46
*Vieira v. Whitfield (In re Shiver)*,
  598 B.R. 221 (Bankr. D.S.C. 2019)......................................................34
*Weber v. U.S. Sterling Sec., Inc.*,
  282 Conn. 722 (2007)..........................................................28
*Williams v. California 1st Bank*,
  859 F.2d 664 (9th Cir. 1988)..........................................................36
*Willsey v. Strawway*,
  44 Misc. 2d 601 (N.Y. Sup. Ct. 1963) ................................................24

**Statutes**

11 U.S.C. § 101 ..........................................................31
11 U.S.C. § 1104 ..........................................................26
11 U.S.C. § 541 .......................................................... passim
11 U.S.C. § 542 .......................................................... 19, 20
11 U.S.C. § 544 .......................................................... passim
11 U.S.C. § 547 ..........................................................26
11 U.S.C. § 548 ..........................................................26
28 U.S.C. § 1334 ..........................................................1
28 U.S.C. § 157 ..........................................................1
28 U.S.C. § 158(a) ..........................................................2
28 U.S.C. § 158(d) ..........................................................3, 4
CPLR § 5225.......................................................... 19, 20

vi

**Other Authorities**

5 *Collier on Bankruptcy* (16th ed. 2024) ........................................................ 33, 39
Fed. R. Bankr. P. 8002 ................................................................................................1
Fed. R. Bankr. P. 8004 ................................................................................................2
Fed. R. Civ. P. 54 .........................................................................................................2
Fed. R. Evid. 408 ........................................................................................................49

## JURISDICTIONAL STATEMENT

This appeal arises from the bankruptcy case filed by Ho Wan Kwok (referred to herein as the "Individual Debtor"), a Chinese dissident and the father of the appellant, Mei Guo ("Ms. Guo"). The dispute centers around the causes of action alleged and other theories asserted by the bankruptcy trustee, Luc Despins, Chapter 11 Trustee (the "Trustee"), in his attempt to recover for the bankruptcy estate the property of HK International Funds Investments (USA) Limited, LLC ("HK USA"). The subject assets consist in a pleasure yacht named the Lady May, a smaller boat that sailed with the Lady May (the "Lady May II"), and $37 million in cash that HK USA borrowed and then pledged to secure the return of the Lady May from Europe to the navigable waters of Connecticut, which HK USA timely delivered.

The summary judgment orders that entered in favor of the Trustee on two of the five counterclaims that he asserted in the underlying adversary proceeding state that the bankruptcy court had jurisdiction over the underlying proceedings pursuant to 28 U.S.C. §§ 157(a) and 1334(b). None of the parties to the adversary proceeding objected to the bankruptcy court entering final judgment. Notices of appeal of the bankruptcy court's orders granting summary judgment were timely filed pursuant to Fed. R. Bankr. P. 8002(a) on April 10, 2023; JA-0978; and May 26, 2023. JA-1066.

Following entry of the summary judgment orders, three counterclaims alleging alternative causes of action seeking the same relief that had already been

1

obtained remained pending. HK USA and Ms. Guo (hereinafter, collectively, the "HK Parties") requested that the bankruptcy court certify the summary judgment orders pursuant to Fed. R. Civ. P. 54(b); JA-1011; the bankruptcy court never addressed the issue. Regardless, the summary judgment orders are effectively final because they granted summary judgment on the Trustee's first and second counterclaims (the "First Counterclaim" and "Second Counterclaim," respectively) and afforded the Trustee the relief he sought through the counterclaims. The Trustee represented to the bankruptcy court that he would not need to pursue his third, fourth, and fifth counterclaim[1] unless the summary judgment orders were reversed. JA-1091 (Tr. 81:21-82:3).

In light of the remaining counterclaims, the HK Parties requested that the district court, if it deemed it necessary, consider the notices of appeal as a motion for leave to appeal and grant such motion pursuant to Fed. R. Bankr. P. 8004(b). D. Conn., 3:23-cv-458-KAD, ECF No. 48, at 5. The district court treated the notices of appeal as a motion for leave to appeal and granted it, determining that it had jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(3) because "[a]lthough there are counterclaims outstanding, for all practical purposes, the Trustee has

---

[1] The fourth counterclaim (avoidance of fraudulent transfer) and fifth counterclaim (negligence) are expressly pled in the alternative while the third counterclaim (declaration that membership interest in HK USA is property of the bankruptcy estate) seeks, in effect, the same relief sought by the Second Counterclaim.

2

achieved all the monetary relief he sought through his counterclaim….” SA-083. The district court, thereafter, affirmed the summary judgment orders, and on September 18, 2024, the HK Parties timely filed an appeal from the district court's September 5, 2024 order of affirmance (the "District Court Order").

This Court's "inquiry into appellate jurisdiction under [28 U.S.C. §] 158(d)… consists of two steps:" first, this Court must determine whether the bankruptcy court order was final or interlocutory and then, whether the district court's decision "independently rendered the matter nonappealable." *Bowers v. Connecticut Nat'l Bank*, 847 F.2d 1019, 1022 (2d Cir. 1988). Here, the Court should take a "pragmatic approach" and look to whether as a "practical matter" the summary judgment orders provide the Trustee with all of the relief he could obtain. *See In re Christian Life Center*, 921 F.2d 1370, 1373 (9th Cir. 1987) (noting bankruptcy order being interlocutory "does not automatically defeat [appellate] jurisdiction," and taking a "pragmatic approach."). The Trustee's own admission to the bankruptcy court, and failure to pursue the remaining counterclaims in the more than twenty months since the entry of the summary judgment orders, establish that there is no relief left for the Trustee to obtain should this Court affirm. Therefore, while three counterclaims remain, because they either seek essentially the same relief that has already been obtained or are expressly pled in the alternative to the First and Second

3

Counterclaim, the underlying orders are effectively final orders, and this Court has jurisdiction pursuant to 28 U.S.C. § 158(d)(1).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the district court erred in affirming the bankruptcy court's order granting summary judgment on the First Counterclaim by concluding that there was no genuine issue of material fact as to the Individual Debtor's sole ownership of the Lady May based upon the application of the doctrine of collateral estoppel.

2.     Whether (i) the district court erred in affirming the bankruptcy court's order granting summary judgment on the Second Counterclaim by concluding that the Trustee, standing in the shoes of the Individual Debtor pursuant to 11 U.S.C. § 541(a)(1), had standing to assert an insider reverse veil-piercing claim under Delaware law against HK USA, and (ii) the bankruptcy court erred in concluding that the Trustee, standing in the shoes of the Individual Debtor's creditors pursuant to 11 U.S.C. § 544(a), had standing to assert an outsider reverse veil-piercing claim.

3.     Whether the district court erred in affirming the bankruptcy court's order granting summary judgment on the Second Counterclaim by concluding that Delaware law permitted an insider reverse veil-piercing claim and, in particular, permitted such claim to be brought on behalf of a non-owner.

4

4. Whether the district court erred in affirming the bankruptcy court's order granting summary judgment on the Second Counterclaim by concluding that the Trustee's insider reverse veil-piercing claim asserted under Delaware law presented no genuine issue of material fact.

## STATEMENT OF THE CASE

### A. HK USA and the Lady May

Ms. Guo was twice a political prisoner of the Chinese Communist Party ("CCP"), having been arrested, detained, and tortured—physically and psychologically—by the CCP, first, in January 2015 for 10 days, and then in December 2016 for 40 days. JA-0557. Following her release from detention in January 2015, Ms. Guo's older brother, Mileson Guo ("Mileson"), purchased and named the Lady May for his younger sister, Mei (pronounced "May"). JA-0521-22 (Tr. 44:11-45:19). Because the CCP was actively targeting the Kwok family and its assets, Mileson did not purchase the Lady May in his or his sister's name. Instead, he purchased it through an entity, Hong Kong International Funds Investments Limited ("HK International"). JA-0522 (Tr. 46:14-18). To provide an additional layer of protection from the CCP, Mileson installed Qu Guojiao ("Ms. Qu"), a trusted advisor, as the sole member of HK International. JA-0558.

In May 2017, the CCP permitted Ms. Guo to travel to the United States in an attempt to coerce the Individual Debtor back to China. JA-0558 Ms. Guo was able

5

to remain in the United States and has resided in the U.S. since 2017. JA-0558. Among Ms. Guo's first priorities when she was safely in the United States was to transfer HK International from Ms. Qu to herself. JA-0559. Ms. Guo became the sole member of HK International on June 27, 2017. JA-0559. In April 2019, Ms. Guo formed HK USA and later transferred the Lady May from HK International to HK USA. JA-0559. The Individual Debtor was not involved with the transfer of HK International from Ms. Qu to Ms. Guo, the formation of HK USA, or the transfer of the Lady May from HK International to HK USA. JA-0559.

**B.      The Individual Debtor's New York Action and Contempt Hearing**

On April 18, 2017, Pacific Alliance Asia Opportunity Fund, L.P. ("PAX") filed a breach of contract action (the "New York Action") against the Individual Debtor in New York County Supreme Court ("N.Y. Supreme Court"). JA-0404. The New York Action had nothing to do with Ms. Guo, HK USA, or the Lady May and neither Ms. Guo nor HK USA was a party. JA-404, JA-0705. The New York Action was a "straightforward breach of contract case" in which PAX alleged that it had loaned money to one of the Individual Debtor's entities, that the entity failed to repay the loan, and that the Individual Debtor was personally liable for the loan under a separate personal guarantee. JA-405.

On September 15, 2020, PAX obtained summary judgment in the New York Action and was awarded approximately $116 million in damages. JA-0437-45. On

6

September 30, 2020, the N.Y. Supreme Court entered a post-judgment restraining order against the Individual Debtor. JA-0452-3. The restraining order did not mention HK USA or the Lady May, and PAX never served it on HK USA or Ms. Guo, HK USA's sole member. JA-0452-3, JA-525 (Tr. 57:7-59:9). On October 9, 2020, the Lady May traveled from New York to Florida. JA-0532 (Tr. 86:2-12). On October 15, 2020, the N.Y. Supreme Court entered a second post-judgment restraining order (the "Second Restraining Order") against the Individual Debtor. JA-0463-4. Unlike the first restraining order, the Second Restraining Order was directed at both the Individual Debtor and the "registered owners of… the yacht, 'the Lady May.'" JA-0463. Ms. Guo was not made aware of the Second Restraining Order until December 2020. JA-0525 (Tr. 57:7-59:9). The Second Restraining Order made it explicitly clear that it was not determining that the Individual Debtor owned the Lady May, but simply seeking to preserve the status quo until ownership could be determined following a trial scheduled for January 15, 2021. JA-0460 (Tr. 22:8-18).

A trial concerning ownership of the Lady May did not occur on January 15, 2021—or ever. JA-1033. Instead, on March 16, 2021, the N.Y. Supreme Court entered a conditional contempt order against the Individual Debtor, pursuant to which the Lady May was to return to New York by May 15, 2021, absent which a daily fine of $500,000 be assessed against the Individual Debtor. JA-0473-5. The

7

Individual Debtor appealed the conditional contempt order, and on July 29, 2021, the N.Y. Supreme Court stayed the contempt proceedings pending the decision of the Appellate Division. JA-504 (Tr. 13:4-8). On November 4, 2021, the Appellate Division denied the Individual Debtor's appeal and ordered an evidentiary hearing related to the contempt order. JA-0509.

A contempt hearing was held on February 2, 2022 (the "Contempt Hearing"). JA-0511-39. The HK Parties were not parties to the New York Action and therefore not parties to the Contempt Hearing proceedings, their respective sole role was as witnesses. JA-0511-39.

### C.    The Contempt Order

The Contempt Hearing lasted just a few hours. JA-0511-39. The Individual Debtor did not testify, instead choosing to invoke his Fifth Amendment right against self-incrimination. JA-0511-39, JA-0554. A week after the Contempt Hearing, the N.Y. Supreme Court issued a final contempt order against the Individual Debtor (the "Contempt Order"). JA-0546-55. The Contempt Order focused on whether PAX had met the elements necessary to hold the Individual Debtor in contempt. JA-0552. In finding that it had, the N.Y. Supreme Court found prejudice to PAX in the Lady May leaving New York because "PAX has demonstrated that it *could* ultimately levy on the Lady May…," not that it would. JA-0553 (emphasis added). The N.Y. Supreme Court found that PAX "could" levy on the Lady May because the Individual Debtor

8

held *a* beneficial interest in it. JA-0553-4 (emphasis added). The N.Y. Supreme Court did not hold that the Individual Debtor's interest was the *only* or the exclusive interest in the Lady May, and did not find whether that interest was a direct interest in the Lady May or an interest in HK USA. JA-0546-55. The N.Y. Supreme Court did not conduct an alter ego analysis vis-à-vis the Individual Debtor and HK USA, or find that HK USA and/or Ms. Guo did not hold any ownership interest in the Lady May. JA-0546-55.

### D.    The Bankruptcy Proceedings and Lady May Stipulation

Following the issuance of the Contempt Order, the Individual Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 in the District of Connecticut. JA-0001. On April 11, 2022, HK USA initiated an adversary proceeding in the bankruptcy case against the Individual Debtor and PAX (the "HK USA Adversary") to establish its ownership of the Lady May. JA-0227-37. On April 29, 2022, HK USA, the Debtor, the Official Committee of Unsecured Creditors (the "Committee"), PAX, and creditors Zeng Wu and Rui Ma (collectively, the Stipulation Parties") jointly filed their Notice of: [Proposed] Stipulation Order Compelling HK [USA] to Transport and Deliver That Certain Yacht, The "Lady May" (the "Lady May Stipulation"), in which the Stipulation Parties agreed that HK USA would return the Lady May to the jurisdiction of the bankruptcy court, *i.e.*, the navigable waters of Connecticut, which it ultimately did. JA-0165-73, JA-1038.

The bankruptcy court entered the Lady May Stipulation as its order on the same day that it was filed. JA-0165-73. As represented in the Lady May Stipulation, to secure the return of the Lady May to the navigable waters of Connecticut (within the bankruptcy court's jurisdiction), HK USA had deposited $37 million (the "Escrow Funds") into an escrow account (the "Escrow Account") pursuant to an escrow agreement (the "Escrow Agreement") with U.S. Bank National Association (the "Escrow Agent"). JA-1066.

HK USA acquired the Escrow Funds through a loan (the "Himalaya Loan") from Himalaya International Financial Group Limited ("Himalaya") in the amount of $37 million, pursuant to a certain loan agreement dated as of April 19, 2022 (the "Loan Agreement"). JA-0344-57. The Himalaya Loan was taken with the expectation that it would be immediately repaid upon the Lady May's return to Connecticut. JA-0165-73. HK USA is required to pay interest of three percent (3%) per month on the Himalaya Loan. JA0348. Ms. Guo guaranteed repayment of the Himalaya Loan. JA-0344-57, JA-0358-61. The Himalaya Loan has not been repaid because the Trustee recovered the Escrow Funds pursuant to the Second Summary Judgment Decision and Order (defined below). SA-074. Himalaya filed a Request for Arbitration against HK USA and Ms. Guo with the London Court of International Arbitration to recover the proceeds in October 2022. JA-1037.

10

The Lady May Stipulation specifically protects, and addresses the return of, the Escrow Funds. JA-0165-73. The Lady May Stipulation provides, *inter alia*, that if HK USA met certain conditions, including securing the return of the Lady May and establishing a repair reserve, it could file a declaration attesting to the same. JA-0167-8. Provided that PAX, the Committee, the Debtor, or the Office of the United States Trustee did not file an objection to the HK USA certification, HK USA was entitled to provide a copy of the HK USA certification to the Escrow Agent in accordance with the Escrow Agreement, at which point the Escrow Agent was required to immediately transfer the Escrow Funds to HK USA. JA-0168.

### E.      The Trustee's Counterclaims

The Trustee was appointed in the Debtor's bankruptcy case in early July 2022. JA-0194. On September 23, 2022, the Trustee asserted five counterclaims in the HK USA Adversary, including counterclaims against Ms. Guo who was not then a party to the adversary proceeding. JA-0238-307. The First Counterclaim alleged that the Lady May is property of the Individual Debtor's bankruptcy estate and that it should be surrendered to the Trustee based on a theory of collateral estoppel arising on account of the Contempt Order entered in the New York Action. JA-0295-97. The Second Counterclaim sought a declaration that HK USA's property, including the Lady May and the Escrow Funds, is property of the bankruptcy estate based on the theory that HK USA is the alter ego of the Individual Debtor. JA-0297-99.

### F. The First Summary Judgment Order

On March 19, 2023, the Trustee filed a motion for summary judgment on the First Counterclaim (the "First Summary Judgment Motion"). JA-0362. On March 27, 2023, the bankruptcy court granted from the bench the Trustee's First Summary Judgment Motion. SA-002.

The First Summary Judgment Motion was based exclusively on collateral estoppel purportedly arising from the New York Action and the Contempt Order, SA-005-35, and the bankruptcy court found that "as a matter of law, the HK Parties are collaterally estopped from contesting the Individual Debtor's beneficial ownership and control of the Lady May." SA-035. On March 27, 2023, the bankruptcy court entered its Order Granting Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Partial Summary Judgment (the "First Summary Judgment Order"). SA-001. On March 30, 2023, the bankruptcy court filed its Supplemental Memorandum of Decision in Support of Oral Ruling Granting Motion for Partial Summary Judgment (the "First Summary Judgment Decision). SA-005. On March 31, 2023, the bankruptcy court entered an order, with the HK Parties' consent, amending the First Summary Judgment Order to include that the Lady May II is also property of the Individual Debtor's estate. SA-036-8. On April 10, 2023, the HK Parties appealed the First Summary Judgment Order to the district court. JA-0978.

### G. The Second Summary Judgment Decision and Order

On April 3, 2023, the Trustee moved for summary judgment on his Second Counterclaim (the "Second Summary Judgment Motion") arguing that HK USA is the alter ego of the Individual Debtor, and, therefore, the assets of HK USA are property of the Individual Debtor's estate. JA-0750.

The bankruptcy court conducted a hearing on the Second Summary Judgment Motion on April 20, 2023. SA-046. On May 18, 2023, the bankruptcy court issued its Memorandum of Decision and Order Granting Motion for Partial Summary Judgment on Second Counterclaim (the "Second Summary Judgment Decision and Order"). SA-039. The bankruptcy court concluded that the Trustee had standing to bring the Second Counterclaim pursuant to 11 U.S.C. § 544(a), and held that HK USA is the Individual Debtor's alter ego, basing its decision in substantial part on the First Summary Judgment Decision and the determination therein that Individual Debtor owns the Lady May and the Lady May II. SA-058. In addition to relying on its collateral estoppel ruling, the bankruptcy court also impermissibly drew certain inferences and weighed evidence against the HK Parties based on the factual record. SA-058-62. On May 26, 2023, the HK Parties appealed the Second Summary Judgment Decision and Order to the district court. JA-1066.

13

**H.** **The District Court Appeal**

The district court consolidated the appeals of the First Summary Judgment Order and Second Summary Judgment Decision and Order. JA-1191. On August 23, 2024, the District Court Order issued affirming the bankruptcy court's orders. SA-076. The district court, addressing the Second Counterclaim first, concluded that the Trustee, standing in the shoes of the Individual Debtor pursuant to 11 U.S.C. § 541(a)(1), may assert an insider reverse veil-piercing claim under Delaware law against HK USA. SA-084-5. The district court further concluded that the Trustee's insider reverse veil-piercing claim asserted under Delaware law presented no genuine issue of material fact. SA-088. As to the First Counterclaim, the district court agreed with the bankruptcy court that the Contempt Order in the New York Action collaterally estopped the HK Parties from contesting that the Individual Debtor is the sole owner of the Lady May. SA-088.

## SUMMARY OF ARGUMENT

The N.Y. Supreme Court did not "necessarily decide" the issue of whether the Individual Debtor solely owned the Lady May in holding him in contempt for not having caused the return of the Lady May to the jurisdiction of New York. Sole ownership by the Individual Debtor was not essential to the Contempt Order. The HK Parties were also not in privity with the Individual Debtor in that contempt proceeding because the Individual Debtor's interests materially conflicted with those

14

of the HK Parties, and his positions significantly compromised theirs. Therefore, collateral estoppel does not apply to preclude the HK Parties from establishing the extent of their ownership interest in the Lady May. Since the bankruptcy court below relied entirely upon collateral estoppel to hold that the Contempt Order established the Individual Debtor's sole ownership of the Lady May, this Court should reverse the district court's affirmation of the bankruptcy court's First Summary Judgment Order.

With respect to the Second Summary Judgment Decision and Order, the Trustee lacks standing to prosecute the reverse veil-piercing claim alleged against HK USA. Under Delaware law, the Individual Debtor did not hold such a reverse veil-piercing claim against HK USA and Bankruptcy Code § 541(a) did not confer upon the bankruptcy estate any greater rights and interests upon the commencement of the bankruptcy case. The "strong-arm powers" conferred upon the Trustee pursuant to Bankruptcy Code § 544(a) also do not provide the Trustee with the legal authority to prosecute the reverse veil-piercing claim alleged in the Second Counterclaim. Section 544(a) only authorizes the Trustee, in the specific enumerated circumstances, to cut off any secret or unperfected lien against the Individual Debtor's property. It does not authorize the Trustee generally to bring causes of action held by the Individual Debtor's creditors.

15

Finally, even assuming this Court holds that the Trustee possessed standing to prosecute the reverse veil-piercing claim alleged in the Second Counterclaim, this Court should still reverse the district court's affirmance of the bankruptcy court's Second Summary Judgment Decision and Order because it raises numerous genuine issues of material fact as specifically detailed and explained below.

**STANDARD OF REVIEW**

This Court's review of the District Court Order is *de novo*. *Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 387 (2d Cir. 2018) (this Court "appl[ies] the same standard of review employed by the district court to the decision of the bankruptcy court. Accordingly, [this Court] review[s] the bankruptcy court's findings of fact for clear error and its legal determinations *de novo*") (citing *In re United States Lines, Inc.*, 197 F.3d 631, 640-41 (2d Cir. 1999)). Grants of summary judgment are also subject to *de novo* review. *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 67 (2d Cir. 1998) ("[W]e review the district court's affirmance of the bankruptcy court's order in accordance with our well established standards of review" and "review a grant of summary judgment *de novo*."). *See also SEC v. Monarch Funding Corp.*, 192 F.3d 295, 302 (2d Cir. 1999) (orders granting summary judgment based upon the doctrine of collateral estoppel are also reviewed *de novo*.)

16

## ARGUMENT

### I. Collateral Estoppel Does Not Preclude the HK Parties from Litigating Ownership of the Lady May.

The district court erred in affirming the bankruptcy court's holding that the Contempt Order collaterally estopped the HK Parties from contesting that the Individual Debtor is the sole owner of the Lady May.

The preclusive effect of a state court judgment in a subsequent federal lawsuit is generally determined by the "preclusion law of the State in which judgment was rendered." *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985). "There are two requirements for the invocation of the doctrine of collateral estoppel under New York law: (1) 'there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Johnson v. Watkins*, 101 F.3d 792, 794-95 (2d Cir. 1996) (quoting *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71 (1969)).

### A. The Individual Debtor's Sole Ownership of the Lady May was not Necessarily Determined by the Contempt Order.

Under New York law "an issue was 'necessarily determined' [for purposes of collateral estoppel] if it was an essential element of a finding." *Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Investors, LLC)*, 524 B.R. 62, 78 (Bankr. D. Del. 2015). Finding that the Individual Debtor solely owned the

17

Lady May was not an essential element of entering a final order of contempt against him. As the N.Y. Supreme Court even recognized, all it needed to find was that the Individual Debtor "holds a beneficial interest and controls the Lady May." JA-0553.

On March 17, 2021, the N.Y. Supreme Court held the Individual Debtor in contempt and imposed a fine of $500,000 per day for each day after May 15, 2021, that the Lady May remained outside the court's jurisdiction. JA-0555. The Individual Debtor appealed this decision to the Appellate Division, First Department. During the pendency of the appeal, the N.Y. Supreme Court recognized that PAX had not "met [its] burden on the record that's presently before the Court for a final order of civil contempt because there is an issue about the ownership of the ship…." JA-0504 (Tr. 13:16-20). The N.Y. Supreme Court then stayed further proceedings on the contempt motion pending the appeal. JA-504 (Tr. 13:4-8). On November 4, 2021, the Appellate Division affirmed the contempt finding and fine, and instructed the N.Y. Supreme Court "to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess the appropriate penalties." JA-0509.

The Contempt Hearing, therefore, presented the issue of whether a final order of contempt should enter against the Individual Debtor for violating an order of the N.Y. Supreme Court by failing to return the Lady May to the court's jurisdiction. JA-0546. The N.Y. Supreme Court, citing *Fleetwood Fin. v. Walter J. Dowd, Inc.,* 2016

18

WL 11546917, at *2 (N.Y. Sup. Ct. Sept. 14, 2016) (which, in turn, cited *McCormick v. Axelrod*, 59 N.Y.2d 574, 583, *amended*, 60 N.Y.2d 652 (1983)), identified the four requirements necessary to find the Individual Debtor in contempt, including a showing of "prejudice to the right of a party to the litigation." JA-0552.

In considering the prejudice requirement, the N.Y. Supreme Court stated that the "extent of PAX's ongoing 'prejudice' turns on whether PAX has demonstrated that it *could* ultimately levy on the Lady May to satisfy" its judgment. JA-0553 (emphasis added). The court noted that "[u]nder CPLR § 5225," New York's turnover statute, "'money or other property' is leviable where the debtor holds the requisite 'interest.'" JA-0553. The court specifically recognized that:

> To satisfy this requirement, "[i]t is not necessary that the judgment debtor have legal title to the property; a beneficial interest is sufficient." Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.09. "A beneficial interest is '[a] right or expectancy in something . . . as opposed to legal title to that thing.'" *Peterson v. Islamic Rep. of Iran*, 2013 U.S. Dist. LEXIS 40470, 2013 WL 1155576, at *30 (S.D.N.Y. Mar. 13, 2013) (citing *Black's Law Dictionary*, Interest (9th ed. 2009)).

JA-0553. In finding the Individual Debtor in contempt, the court determined that the "evidence clearly and convincingly demonstrates that Kwok holds a beneficial interest in and controls the Lady May." JA-0554. Crucially here, the N.Y. Supreme Court did not need to decide whether the Individual Debtor solely owned the Lady May, and did not decide that the Lady May's titled owner, HK USA, held no

19

ownership interest at all. Thus, the issue of the Individual Debtor's sole ownership of the Lady May, *vel non*, was not necessarily decided by the Contempt Order.

The Trustee's First Counterclaim sought a "ruling pursuant to section 541 and 542 of the Bankruptcy Code (1) declaring that the Lady May is property of the [Individual] Debtor's chapter 11 estate to be administered by the Trustee and (2) ordering the surrender of the Lady May to the Trustee." JA-0296-7. In granting the Trustee the relief sought the bankruptcy court specifically held that the Individual Debtor's estate is the sole owner of the Lady May:

> Effective as of 2:55 p.m. on March 27, 2023, the Lady May (as defined below) is property of the Debtor's chapter 11 estate (the "Estate") pursuant to 11 U.S.C. § 541(a) to be administered by the Trustee. *In particular, the sole owner of the Lady May is*:
>
> > Name: Luc A. Despins, as the chapter 11 trustee for the estate of Ho Wan Kwok

SA-002 (emphasis added). In its subsequent written decision the bankruptcy court held, again based solely on collateral estoppel, that:

> [A]s a matter of law, the Trustee is entitled to summary judgment on the First Counterclaim, namely that pursuant to 11 U.S.C. § 541(a) the Lady May is property of the Estate, which, pursuant to 11 U.S.C. § 542(a), the HK Parties must deliver to the Trustee.

SA-035. HK USA delivered the Lady May to the Trustee, and it was sold with bankruptcy court approval. Bankr. D. Conn., 5:22-bk-50073-JAM, ECF No. 1953.

20

The N.Y. Supreme Court only needed to decide that the Individual Debtor held some beneficial interest and controlled the Lady May to find prejudice and hold the Individual Debtor in contempt. The contempt proceeding was not a turnover proceeding pursuant to CPLR § 5225 and the N.Y. Supreme Court did not order the turnover and liquidation of the Lady May. Nevertheless, the bankruptcy court relied exclusively upon the Contempt Order to order the seizure and liquidation of the Lady May, and did so even though the N.Y. Supreme Court had not necessarily decided that the Individual Debtor solely owned the Lady May. Thus, the bankruptcy court erred in relying upon the Contempt Order to preclude the HK Parties from litigating the issue of ownership and determining based solely on collateral estoppel that the Individual Debtor was the sole owner of the Lady May.

### B. The Individual Debtor and HK Parties Were Not in Privity at the Contempt Hearing.

"The litigant seeking the benefit of collateral estoppel must demonstrate that the decisive issue was necessarily decided in the prior action against a party, or one in privity with a party." *Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001). The HK Parties were not parties to the New York Action, and the bankruptcy court erred in holding that they were in privity with the Individual Debtor because he HK Parties' and Individual Debtor's interests materially conflicted and the HK Parties did not control, and lacked sufficient ability to participate in, the contempt proceeding.

21

"[P]rivity does not have a single well-defined meaning." *Id*. As explained by the *Buechel* Court:

> Rather, privity is an amorphous concept not easy of application… and includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and [those who are] coparties to a prior action.

*Id*. (cleaned up). Furthermore:

> In addressing privity, courts must carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances.

*Id*. at 304-05. Importantly, "[d]oubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." *Id*. at 305.

The bankruptcy court found that although the HK Parties were not parties to the New York Action, SA-030, there was a "'substantial identity of the incentives' between the Individual Debtor and the HK Parties." SA-031.[2] While there may have been some overlap in incentives, the Individual Debtor took actions in the New York Action in direct conflict with the interests of the HK Parties.

---

[2] The district court did not address the privity argument, instead assessing only the HK Parties' level of participation in the contempt proceeding. SA-088-90.

For much of the New York Action, and certainly in the Contempt Hearing, the Individual Debtor asserted his Fifth Amendment right against self-incrimination. JA-0554. The Individual Debtor's refusal to respond to discovery or to testify to establish the predicate facts supporting the ultimate conclusion that he held no ownership interest in the Lady May subjected him to an adverse inference. JA-0554 (granting PAX an adverse inference because the Individual Debor "invoked his Fifth Amendment right against self-incrimination in response to PAX's post-judgment discovery, including in response to requests specifically about the Lady May"). The Individual Debtor's prevailing interest was protecting himself from criminal jeopardy even if that came at the expense of denying the N.Y. Supreme Court critical facts about the Lady May and even being held in civil contempt. Indeed, the Individual Debtor cannot fairly be characterized as a representative for the HK Parties at the Contempt Hearing. Given the direct and material conflict of interest, the bankruptcy court erred in concluding that the HK Parties were in privity with the Individual Debtor. *See e.g.*, *Slocum on Behalf of Nathan "A" v. Joseph "B"*, 183 A.D.2d 102, 104-05, 588 N.Y.S.2d 930 (3d Dept 1992) ("[A]ctual or potential conflicts of interest in the previous litigation as between the family member who was and the family member who was not a party to the prior suit will negate the necessary element of adequate representation to establish privity.") (citation omitted); *Globe Surgical Supply v. GEICO Ins. Co.*, 59 A.D.3d 129, 144-45, 871

23

N.Y.S.2d 263 (2d Dept 2008) (finding in the context of a class action that an individual who invoked the Fifth Amendment at his deposition could not adequately represent the interests of the class).

Moreover, the HK Parties were simply witnesses at the Contempt Hearing, and they did not control the proceeding. The HK Parties had no choice on the format; they had no ability to engage in any pre-hearing discovery; and they had no ability to submit merits briefs or make any argument. JA-707-12. Appearing as a witness, even where that witness's counsel examines certain other witnesses, is not evidence of control sufficient to render the witness in privity with a party. *See, e.g., Comi v. Breslin & Breslin*, 257 A.D.2d 754, 758, 683 N.Y.S.2d 345 (3d Dept 1999) (finding that defendants' claim was not barred by collateral estoppel where defendants were not parties to the relevant proceeding and "had absolutely no control over the litigation . . . and, as such, neither they nor their interests were adequately represented"); *Willsey v. Strawway*, 44 Misc. 2d 601, 606 (N.Y. Sup. Ct. 1963), *aff'd*, 22 A.D.2d 973 (1964); *see also Molino v. Cty. of Putnam*, 29 N.Y.2d 44, 49 (1971) (noting that *Willsey* was correctly decided).

The HK Parties also lacked appellate rights because neither was an aggrieved party under New York law. *See, e.g., In re Annette I.*, 34 A.D.3d 479, 480, 823 N.Y.S.2d 542 (2d Dept 2006) (dismissing appeal because non-party appellant was not an aggrieved party); *Lugo v. Torres*, 174 A.D.3d 592, 594, 107 N.Y.S.3d 311 (2d

24

Dept 2019) (non-party child in a divorce proceeding was not aggrieved and therefore could not appeal even where "an order contains language or reasoning that a party deems adverse to its interests") (quotations and citation omitted).

The Individual Debtor's incentives at the Contempt Hearing simply were not aligned with those of the HK Parties. The Individual Debtor did not serve as the HK Parties' representative in the contempt proceeding when he refused to respond to discovery or testify, and thereby subjected himself to an adverse interest. The HK Parties role in the Contempt Hearing was as witnesses. Indeed, they cannot fairly be characterized as having controlled any aspect of the contempt proceeding to ensure that their rights were fully and fairly protected. Even if there was some doubt in this regard, it must be resolved in the HK Parties' favor as the non-movants.

## II.      The Trustee Lacks Standing to Assert a Reverse Veil-Piercing Claim.

For the reasons more fully set forth herein, the district court erred in holding that the Trustee had standing to assert a reverse veil-piercing claim. The "insider" reverse veil-piercing claim alleged in the Second Counterclaim does not constitute "property of the estate" within the meaning of Bankruptcy Code § 541(a) because it is not a cause of action under Delaware law and, as held by the bankruptcy court below, would be precluded by binding Second Circuit precedent. Furthermore, the bankruptcy court erred in holding that the Trustee had standing to bring an "outsider" reverse veil-piercing claim because the "strong-arm powers" conferred by

25

Bankruptcy Code § 544(a) do not authorize the Trustee to bring generalized causes of action held by the Individual Debtor's creditors.

### A. The Trustee Lacks Standing to Assert an Insider Reverse Veil-Piercing Claim Standing in the Shoes of the Individual Debtor.

The district court held that the Trustee could bring the alter ego[3] claim alleged in the Second Counterclaim because the Trustee stood in the shoes of the Individual Debtor pursuant to Bankruptcy Code § 541(a). SA-084-5. In the Second Counterclaim, the Trustee sought to pierce the corporate veil of HK USA to disregard its corporate separateness such that HK USA's assets—the Lady May, the Lady May II and the proceeds of the Himalaya Loan—are determined to constitute property of the Individual Debtor's bankruptcy estate. This Court should reverse because Delaware law would not permit the Individual Debtor to prosecute the veil-piercing claim alleged by the Trustee in the Second Counterclaim, and Bankruptcy Code § 541(a) does not create any greater property rights or interests in favor of the Trustee.

The commencement of a bankruptcy case creates an estate comprised of essentially "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). A trustee appointed pursuant to

---

[3] As explained below, Delaware law applies to this claim. Delaware courts use the terms "piercing the corporate veil" and "alter ego" theory interchangeably. *See Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VCP, 2008 Del. Ch. LEXIS 196, at *16 n.32 (Del. Ch. Dec. 23, 2008).

Bankruptcy Code § 1104(a) possesses the statutory authority provided by various provisions of the Bankruptcy Code to bring causes of action. *See, e.g., id*. §§ 544, 547 & 548. As this Court explained decades ago:

> Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia*, on the rights of the debtor and on certain rights of the debtor's creditors, *see, e.g.*, 11 U.S.C. §§ 541, 544, 547 (1982 & Supp. V 1987). Whether the rights belong to the debtor or the individual creditors is a question of state law…. Thus, the trustee stands in the shoes of the debtors, and [except as expressly permitted by statute] can only maintain those actions that the debtors could have brought prior to the bankruptcy proceedings.

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) (internal quotation marks and citations omitted). Similarly, this Court has held that "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankruptcy corporation itself." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *see also Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 826 (2d Cir. 1997); *Picard v. JPMorgan Chase Bank & Co (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 70-71 (2d Cir. 2013). Therefore, the Trustee has standing to bring only those causes of action that were either: (i) held by the Individual Debtor as of the commencement of his bankruptcy case and became property of the bankruptcy estate pursuant to applicable state law and Bankruptcy Code § 541(a); or (ii) specifically provided for pursuant to some other provision of the Bankruptcy Code.

27

The Individual Debtor could not have, under applicable Delaware law, prosecuted an alter ego claim against HK USA. As recognized by both the bankruptcy and district courts, the law of a foreign limited liability company's governing jurisdiction determines the issue of veil-piercing. *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013) ("a bankruptcy court must apply the choice of law rules of the forum state"); *Weber v. U.S. Sterling Sec., Inc.*, 282 Conn. 722, 730 (2007) ("[W]hen a limited liability company is incorporated in another state, our statutes mandate application of the law of that foreign state."). Because HK USA is a Delaware limited liability company, Delaware law controls.

The Second Counterclaim sought to "'reverse pierce' the corporate veil between the Individual Debtor and HK USA." SA-047 (incorporating by reference Bankr. D. Conn. 5:22-ap-5003-JAM, ECF No. 202). "Namely, the Trustee [sought] to hold HK USA liable for the debts of its alleged beneficial owner and controller – the Individual Debtor." *Id*. Courts have recognized two variants of reverse veil-piercing: "insider" and "outsider":

> Insider reverse veil-piercing is implicated where "the controlling [member] urges the court to disregard the corporate entity that otherwise separates the [member] from the corporation." Outsider reverse veil-piercing is implicated where "an outside third party, frequently a creditor, urges a court to render a company liable on a judgment against its member."

28

*Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021), (citations omitted).

The Trustee relied, in part, upon Bankruptcy Code § 541 to provide the statutory basis for the Second Counterclaim. JA-0244, JA-0299. By bringing the Second Counterclaim under Bankruptcy Code § 541 the Trustee asserted an insider reverse veil-piercing claim because the asserted claim constituted a claim held by the Individual Debtor to pierce the corporate veil of HK USA and disregard its corporate separateness. Indeed, the district court specifically recognized that "the situation presented [by the Second Counterclaim] was one of insider veil-piercing". SA-084-5. Significantly, Delaware law has not recognized insider reverse veil-piercing as a viable claim; SA-085; *see also Manichaean*, 251 A.3d at 714 ("In defining the rule, I begin by stressing that I am not endorsing 'insider' reverse veil piercing. The rule stated here applies only to 'outsider' reverse veil piercing."), and the weight of authority is to the contrary. *See e.g.*, *ALT Hotel, LLC v. Diamondrock Allerton Owner, LLC (In re ALT Hotel, LLC)*, 479 B.R. 781, 802 (Bankr. N.D. Ill.) (collecting cases and acknowledging that "courts are overwhelmingly hostile to insider reverse veil piercing." (internal quotation makes and citations omitted)).

The bankruptcy court, on the other hand, correctly rejected the Trustee's standing to assert an insider reverse veil-piercing claim pursuant to Bankruptcy Code § 541, recognizing that "the *Wagoner* doctrine bars the Second Counterclaim insofar

29

as the Trustee 'stands in the shoes of the [Individual Debtor] …." Bankr. D. Conn. 5:22-ap-5003-JAM, ECF No. 202 at 10 (citing *Hirsch*, 72 F.3d at 1093); *see also Titan Real Estate Ventures, LLC. M.J.C.C. Realty L.P. (In re Flanagan)*, 415 B.R. 29, 44 (D. Conn. 2009) ("[B]ecause a Connecticut court would not have stepped in to aid [the debtor] in undoing his illegal bargain with MJCC, the Trustee, and its assignee, Titan, are similarly barred from recovery any interest in MJCC and its assets under a reverse veil piercing claim."). The Trustee has no standing generally to sue third parties on behalf of the estate's creditors. The Trustee succeeded only to the property rights and interests held by the Individual Debtor which became upon the commencement of his bankruptcy case "property of the estate" based upon applicable state law and within the meaning Bankruptcy Code § 541(a).

The doctrine of *in pari delicto* would further preclude the Trustee from asserting an insider reverse veil-piercing claim standing in the shoes of the Individual Debtor. Delaware law recognizes the doctrine of *in pari delicto*. *Stewart v. Wilmington Trust SP Servs.*, 112 A.3d 271, 301-02 (Del. Ch. 2015) (internal quotation marks and citations omitted). Courts have repeatedly applied the *in pari delicto* doctrine to preclude a bankruptcy trustee from asserting causes of action purportedly held by the debtor who participated equally in wrongdoing. *See e.g.*, *Kirschner v. Large S'holders (In re Tribute Co. Fraudulent Conveyance Litig.)*, 10 F.4th 147, 167-170 (2d Cir. 2021); *Parmalat Capital Fin. V. Bank of Am. Corp.*, 412

30

Fed. Appx. 325, 327-28 (2d Cir. 2011); *In re Flanagan*, 415 B.R. at 44. Here, the Second Counterclaim alleges that the Individual Debtor acted in concert with HK USA as part of a scheme to shield the Individual Debtor's assets from his creditors. JA-0244-65, JA-0297-8. Thus, the doctrine of *in pari delicto* would bar this cause of action.

This Court's decision in *Stadtmauer v. Tulis (In re Nordlicht)*, 115 F.4th 90 (2d Cir. 2024), is perfectly consistent with this reasoning. In *Nordlicht*, this Court recognized that, under New York law, an attempt of a third party to pierce the corporate veil does not constitute a standalone cause of action. *Id*. at 110-11. Nevertheless, this Court held that it constituted a "claim" under the broad definition of the term set forth in Bankruptcy Code § 101(5) and under New York law. *Id*. The bankruptcy trustee could then settle and sell pursuant to Bankruptcy Code § 363 the alter ego claim. *Id*. at 111. Here, Delaware law applies and, for the reasons set forth above, Delaware law does not permit the insider reverse veil-piercing claim. Also here, the Trustee is not simply trying settle and sell the insider reverse veil-piercing claim. He is attempting to prosecute it as a standalone cause of action against the HK Parties who have established his inability to do so as well as the cause of action's invalidity under Delaware law and pursuant to the doctrine of *in pari delicto*. A contrary interpretation of *Nordlicht* would effectively reverse more than three decades of binding precedent in this circuit that Bankruptcy Code § 541(a) does not

31

confer upon a bankruptcy trustee the authority to assert causes of action on behalf of a debtor's creditors. *See, e.g., Wagoner*, 944 F.2d at 118.

The district court did not consider any of the foregoing and simply concluded, summarily, that the Trustee had standing to bring the alter ego claim alleged in the Second Counterclaim because he stood in the shoes of the Individual Debtor pursuant to Bankruptcy Code § 541(a)(1), and could therefore prosecute an insider reverse veil piercing claim. In fact, and as recognized by the bankruptcy court, the Trustee lacks standing to assert an insider reverse veil-piercing claim under § 541(a)(1). Thus, the District Court Order should be reversed as to the Second Counterclaim.

**B.      The Trustee Lacks Standing to Assert an Outsider Reverse Veil-Piercing Claim Standing in the Shoes of the Individual Debtor's Creditors.**

The bankruptcy court concluded that the Trustee had standing to bring, under Delaware law, the alter ego claim alleged in the Second Counterclaim standing in the shoes of the Individual Debtor's creditors pursuant to 11 U.S.C. § 544(a). SA-047. Such a claim would constitute an outsider reverse veil-piercing claim. Contrary to the bankruptcy court's conclusion, Bankruptcy Code § 544(a) serves certain limited purposes, and does not provide the Trustee with sweeping authority to bring all causes of action held generally by the Individual Debtor's creditors, including an outsider reverse veil-piercing claim under Delaware law.

32

Bankruptcy Code § 544(a) gives a trustee, "as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by" (i) a hypothetical judgment lien creditor, (ii) a creditor with its execution unsatisfied, or (iii) a bona fide purchaser of real property. 11 U.S.C. § 544(a). As expressly provided in the legislative history to § 544, § 544(a) "is the strong arm clause of the current law, formerly found in Section 70c of the Bankruptcy Act." 5 *Collier on Bankruptcy* ¶ 544.LH[1] (16th ed. 2024). "The purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case." *Canney v. Merchs. Bank (in Re Frazer)*, 284 F.3d 362, 374 (2d Cir. 2002) (quoting 5 *Collier on Bankruptcy* ¶ 544.03 (15th ed. rev. 2001)). As explained further by the district court in *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011), in rejecting the trustee's effort to bring claims standing in the shoes of creditors pursuant to § 544(a), the "purpose of this section is to allow the trustee in bankruptcy to cut off any secret or unperfected liens on debtor property that would bind the debtor itself, but not the debtor's judgment creditor, who typically enjoys top priority under state creditor/debtor laws." *Id*. at 93; *see also Vieira v. Whitfield (In re Shiver)*, 598 B.R. 221, 232 (Bankr. D.S.C.

33

2019) (quoting *In re Houston*, 409 B.R. 799, 805 (Bankr. D.S.C. 2009), citing 5 *Collier on Bankruptcy* ¶ 544.03 (15th ed. rev. 2008)).

Section 544(a) does not confer upon a bankruptcy trustee the right generally to bring causes of action held by the debtor's creditors. Indeed, the United States Supreme Court confronted this very issue in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), and concluded that the trustee in reorganization "does not have standing to sue an indenture trustee on behalf of debenture holders," who were creditors of the bankruptcy estate. *Id*. at 434. As the Supreme Court explained further:

> This does not mean that it would be unwise to confer such standing on trustees in reorganization. It simply signifies that Congress has not yet indicated even a scintilla of an intention to do so, and that such a policy decision must be left to Congress and not to the judiciary.

*Id*.

As subsequently noted by the United States Court of Appeals for the Eight Circuit in *In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222 (8th Cir. 1987), "Congress, however, declined to accept the invitation." *Id*. at 1227. "In 1978, six years after *Caplin* was decided, Congress overhauled the bankruptcy laws when it enacted the Bankruptcy Code." *Id*. In doing so, it specifically considered and drafted a subsection to overrule *Caplin*. *Id*. at 1227 n.9. Ultimately, though, "that provision was deleted before promulgation of the final version of Section 544." *Id*. 1227-28. Thus:

34

> Because subsection (c), as a part of Section 544, would have applied to both reorganization and liquidation trustees, and because Congress refused to enact subsection (c), we believe Congress' message is clear – no trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee as in the present case, has power under Section 544 of the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors

*Id*. at 1228. *See also Picard*, 460 B.R. at 94-95.

In entering its Second Summary Judgment Decision and Order, the bankruptcy court incorporated by reference its prior decision denying dismissal and, in particular, its conclusion that, pursuant to § 544(a), the Trustee has standing to bring a reverse veil-piercing claim under Delaware law as set forth in the Second Counterclaim. SA-047. In reaching this conclusion, the bankruptcy court relied extensively on this Court's decision in *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688 (2d Cir. 1989) ("*St. Paul*"). Bankr. D. Conn. 5:22-ap-5003-JAM, ECF No. 202 at 11-16. *St. Paul* does not support the bankruptcy court's conclusion.

In *St. Paul*, the defendant-third party plaintiff, PepsiCo, Inc. ("PepsiCo"), sought in the Southern District of New York to assert an alter ego claim against Banner Industries, Inc. ("Banner") based upon Banner's alleged wrongful diversion of assets of Lee Way Motor Freight, Inc. ("Lee Way"), through Banner's partially owned subsidiary, Commercial Lovelace Motor Freight, Inc. ("CL"). *Id*. at 690. CL had previously bought Lee Way from PepsiCo. *Id*. Lee Way later merged with CL to

form the company known as Lee Way Holding Co., which then filed bankruptcy in the Southern District of Ohio a week after the merger took place. *Id*. at 691-92. The bankruptcy trustee thereafter asserted claims in the bankruptcy court similar to those sought to be pursued by PepsiCo against Banner. *Id*. at 695.

The question presented in *St. Paul* was whether the trustee exclusively held the claims against Banner or whether they were held by creditors, such as PepsiCo. *Id*. at 696-705. The bankruptcy court in the Southern District of Ohio had previously held that the trustee possessed standing to bring the claims because "under Ohio law an alter ego claim may be asserted by the debtor corporation and because 'the trustee stands in the shoes of creditors.'" *Id*. at 695. This Court then surveyed various decisions in other circuits. *Id*. at 696-700. Some of these decisions concluded, based upon applicable state law, that the alter ego claim constituted property of the estate which could be pursued by the trustee. *See id.* at 696-97 (citations omitted). This Court further noted the circuits that had held that alter ego claims could not be asserted by a bankruptcy trustee based upon applicable state law. *Id*. at 698-99 (citing *Ozark Restaurant*, 816 F.2d at 1225-26, and *Williams v. California 1st Bank*, 859 F.2d 664, 667 (9th Cir. 1988)).

Following this extensive evaluation of the holdings in other circuits this Court concluded that:

> If the claims asserted by PepsiCo in this action are property of the estate (Lee Way Holding Co.) and therefore

36

> properly brought by the trustee, and if PepsiCo has not alleged a direct injury traceable to Banner, PepsiCo does not have standing to assert those claims outside of the bankruptcy proceeding.

*St. Paul*, 884 F.2d at 700. Thus, it is clear from *St. Paul* that if an alter ego claim constitutes property of the estate based on applicable state law (consistent with the vast majority of decisions analyzed by this Court in its decision) because it could be prosecuted by the debtor, then the trustee has standing to bring an alter ego claim standing in the shoes of the debtor. In stating its holding, this Court did not rely upon the ability of the trustee, standing in the shoes of creditors (pursuant to Bankruptcy Code § 544(a) or otherwise), to bring such an alter ego claim. *Id*. *St. Paul* did not even attempt to interpret § 544(a), engage in any related analysis, or explain how § 544(a) specifically conferred authority upon the trustee to bring the alter ego claim against Banner. The broad policy statements scattered throughout the *St. Paul* decision should not be read to extend its holding any further. Thus, in this case the bankruptcy court erred when it relied upon *St. Paul* to support its conclusion that Bankruptcy Code § 544(a) provided the Trustee with the authority to prosecute a reverse veil-piercing claim under Delaware law upon behalf of the Individual Debtor's creditors.

In fact, the subsequent holdings of this Court preclude such application of *St. Paul*. As stated by this Court in *Wagoner*: "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's

37

creditors, but may only assert claims held by the bankruptcy corporation itself." 944 F.2d at 118 (citing *Caplin*, 406 U.S. at 434). The trustee, Irving H. Picard ("Picard"), in *Picard*, like the Trustee here, relied on *St. Paul* for the proposition that he "may assert creditors' claims if they are generalized in nature and not particular to any individual creditor." 721 F.3d at 70. Picard even referenced the particular passage in *St. Paul* "stating that a trustee may bring a claim if the 'claim is a general one with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor.'" *Id*. at 70 (quoting *St. Paul*, 884 F.2d at 701).

This Court found Picard's "argument [to be] flawed on many levels." *Id*. Squarely on point here, this Court proceeded to explain precisely why, in pertinent part:

> • *St. Paul* decided the 'specific question' whether a creditor may bring an alter ego claim against the debtor's parent *when the debtor itself also possesses such a claim. Id*. at 699. But Picard seeks to assert claims that are property only of the creditors, not of the debtor.
>
> • The Trustee's broad reading of *St. Paul* would bring the Court's holding into conflict with a line of cases that came before and after it. As discussed *supra* pp. 32-34, *it is settled that a trustee may not assert creditors' claims against third parties*. *See, e.g., Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). And, of course, *St. Paul* could not alter the Supreme Court's ruling in *Caplin*. Picard's argument thus conflicts with Supreme Court and Second Circuit precedent. *See generally In re*

38

*Stanwich Fin. Servs. Corp.*, 317 B.R. 224, 228 n.4 (Bankr. D. Conn. 2004) (highlighting this tension).

- The language cited by Picard from *St. Paul* is not a pronouncement about third-party standing; it voices the maxim that only a trustee, not creditors, may assert claims that belong to the bankrupt estate. As *St. Paul* elsewhere states: "'[T]he Trustee in bankruptcy has standing to represent only the interests of the debtor corporation.' *Our decision today goes no further than to say that causes of action that could be asserted by the debtor are property of the estate and should be asserted by the trustee*." *St. Paul*, 884 F.2d at 702 n.3 (internal citation omitted) (quoting *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 n.4 (2d Cir. 1985)).

*Picard*, 721 F.3d at 70 (emphasis added); *see also* 5 *Collier on Bankruptcy* ¶ 544.01 (16th ed. 2024).

Thus, contrary to the bankruptcy court's holding, the strong-arm powers conferred by Bankruptcy Code § 544(a) do not establish the Trustee's authority, "standing in the shoes of creditors," to assert an outsider reverse veil-piercing claim against HK USA. Furthermore, contrary to the district court's holding, the property of the estate provisions of Bankruptcy Code § 541(a) do not establish the Trustee's authority to bring an insider reverse veil piercing claim against the HK Parties because, under Delaware law, no such claim exists and, even if it did, the Individual Debtor could not have brought such a claim. Thus, the Trustee lacks standing to assert the Second Counterclaim, both the bankruptcy court's summary judgment

39

orders and the District Court Order were entered in error, and this Court should reverse and remand with instructions to dismiss the Second Counterclaim.

**III.    Reverse Veil Piercing Only Applies Based on the Liability of the Owner of the Entity Sought to be Pierced.**

In a case of first impression, the Court of Chancery of Delaware in *Manichaean* held that "Delaware law allows for reverse veil-piercing in limited circumstances and in circumscribed execution." 251 A.3d at 710. "Delaware public policy disfavors disregarding the separate legal existence of business entities." *Id*. at 706. The Chancery Court explained further that:

> The framework outlined here to evaluate reverse veil-piercing claims comes with an express recognition that such claims, if not guided by appropriate standards, can threaten innocent third-party creditors and shareholders and lead to a host of unpredictable outcomes for these constituencies. Only in cases alleging egregious facts, coupled with the lack of real and substantial prejudice to third parties, should the court even consider utilizing the reverse veil-piercing doctrine.

*Id*. at 714. In establishing the necessary framework, the Chancery Court made clear that reverse veil-piercing only applies when attempting to impose the liability of an entity's owners on the entity itself.  The Chancery Court explained that, "[a]t its most basic level, reverse veil-piercing involves the imposition of liability on a business organization for the liabilities of its *owners*." *Id*. at 710 (citing *Sky Cable, LLC v. DIRECTV, Inc*., 886 F.3d 375, 385 (4th Cir. 2018), for the proposition that "[r]everse veil piercing attaches liability to the entity for a judgment against the individuals

40

who hold an ownership interest in that entity," and *Litchfield Asset Mgmt. Corp. v. Howell*, 799 A.2d 298, 311, 70 Conn. App. 133 (2002) (Conn. App. Ct. 2002), for its definition of reverse veil-piercing "as when 'the assets of the corporate entities [are] made available to pay the personal debts of an owner.'") (emphasis added). In setting forth the standards to be applied, the Chancery Court explained that the court, in part, should "ask whether the *owner* is utilizing the corporate form to perpetuate fraud or an injustice." *Id*. at 715 (emphasis added); *see also id*. at 714 ("whether the subsidiary is simply a facade for the owner" is also a factor).

In considering the availability of reverse veil piercing, the Chancery Court also considered the limited circumstances in which it has been applied by courts applying Delaware law, *i.e.*, in circumstances where "(1) an LLC has a single member, (2) that LLC is the member's alter ego, and (3) that member is using the LLC as a fraudulent shield against judgment creditors." *Id*. at 713 (citing *Sky Cable, LLC*, 886 F.2d 375, at 387). *Manichaean* makes clear that "reverse veil-piercing should be sanctioned only in the most 'exceptional circumstances,'" and expressly applies the doctrine of reverse-veil piercing only to "owners" of a business organization. *Id*. at 714. Ms. Guo is and has always been the sole owner of HK USA. Thus, because the Individual Debtor is not an owner of HK USA, Delaware law does not permit reverse veil-piercing HK USA based on the liability of the Individual Debtor.

41

**IV. The Trustee's Reverse Veil Piercing Claim Raised Numerous Genuine Issues of Material Fact that Precluded Summary Judgment**

Pervasive throughout the bankruptcy court's reasoning set forth in the Second Summary Judgment Decision and Order are inferences drawn, evidence weighed and factual determinations made even in the face of conflicting evidence, all against the non-movants. Critical also to the bankruptcy court's decision is its repeated reliance upon its prior decision applying collateral estoppel to preclude the HK Parties from litigating whether the Individual Debtor solely owned the Lady May. All of this is in the context of a multi-factored fact-intensive and equity-balancing standard required under Delaware law. Because the fact-finding process undertaken by the bankruptcy court and affirmed by the district court is reserved for the trier of fact and is not appropriate in deciding summary judgment, this Court should reverse the district court's affirmance of the bankruptcy court's Second Summary Judgment Decision and Order.

Summary judgment may be granted "only where there is no genuine issue of material fact to be tried, and the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). "In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). "If reasonable minds could differ as to the import of the evidence… and

if… there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *R.B. Ventures Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997). In ruling on a summary judgment motion, a court "may not make credibility determinations or weigh the evidence…. 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *In re Dana*, 574 F.2d at 152.

Under Delaware, law reverse veil-piercing claims are analyzed under the same standard as traditional veil-piercing claims:

> The natural starting place when reviewing a claim for reverse veil-piercing are the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim—the so-called "alter ego" factors that include insolvency, undercapitalization, commingling of corporate and personal funds, the absence of corporate formalities, and whether the subsidiary is simply a facade for the owner.

*Manichaean*, 251 A.3d at 714-15. Courts also must consider "whether the owner is utilizing the corporate form to perpetuate fraud or an injustice." *Id.* The Chancery Court then enumerated eight additional factors that should also be considered in determining whether to reverse pierce an entity. *Id*. at 715. Concluding its articulation of the applicable standards to impose outsider reverse veil-piercing, the Chancery Court stated:

43

> Applying this framework, Delaware courts will be well-equipped to handle the varying concerns courts and commentators have rightfully expressed regarding reverse veil-piercing. The expectations of third-party creditors and investors will be well-protected. And the public convenience factor will require the balancing of the social value of upholding the legitimate expectations of the affected corporate creditors or debtors, applying a rebuttable presumption in favor of assuring such expectations, against the importance of the policies served by allowing a reverse pierce under the particular circumstances involved.

*Id*. at 715-16 (cleaned up). What should be apparent to this Court from the above is that the application of these standards to any but the most-clear set of circumstances is entirely inappropriate on summary judgment. In this case, the complicated set of circumstances presented by this case raise numerous significant disputed issues with respect to nearly every factor set forth above.

## A. The Traditional Alter Ego Factors Raise Genuine Issues of Material Fact.

Concerning the traditional alter ego factors, the bankruptcy court identified certain undisputed facts and weighed them in favor of reverse veil-piercing, including that "HK USA was undercapitalized and could not pay for the operation and maintenance of the Lady May"; "has no income, generates no income, and has no liquid assets"; and has "no directors, officers, or employees" and "did not maintain a corporate bank account." SA-058. The bankruptcy court also considered that "HK USA's only business is the ownership, operation, and maintenance of the

44

Lady May and Lady May II." SA-058. Of course, none these facts imply the fraudulent use of a corporate form when considering that HK USA was, admittedly, a single purpose entity. Reasonable minds certainly could differ as to the import of foregoing evidence.

Moreover, there were numerous counter-facts evidencing the bona fides of HK USA's existence. As a limited liability company under Delaware law, HK USA was not required to have any directors or officers, or even employees. Ms. Guo was undisputedly its sole member. HK USA also was not required to have a bank account and actually made arrangements for the management of the Lady May and the payment of all of its expenses. JA-800. HK USA had undertaken the appropriate corporate formalities in its formation and the maintenance of its corporate status.

Another alter ego factor asks "whether the subsidiary is simply a facade for the owner." Of course, the owner is Ms. Guo but the Trustee seeks to reverse veil-pierce based on the liabilities of the Individual Debtor. In finding this factor to be present, the bankruptcy court relies upon its First Summary Judgment Order:

> The Court adopts its conclusions in the [First Summary Judgment Order] that the Individual Debtor beneficially owns and controls the Lady May and the Lady May II. *Taken together*, the Trustee has established that HK USA's only business purpose is the nominal ownership, operation, and maintenance of assets the Individual Debtor beneficially owns and controls.

45

SA-058-9 (emphasis added). First, if this Court reverses the district court's affirmance of the First Summary Judgment Order, it would not then support the bankruptcy court's factual conclusion. Second, even assuming that the HK Parties are precluded from disputing that the Individual Debtor solely owns the Lady May, the bankruptcy court is drawing the inference from this fact against the non-movants that "[t]his alone establishes that HK USA is a mere instrumentality of the Individual Debtor." The predicate fact does not necessarily establish the bankruptcy court's factual conclusion.[4]

In further support of the facade factor, the bankruptcy court also relied upon the fact that "HK USA shares or shared office space with, *inter alia*: (i) the Individual Debtor's counsel…; (ii) a family office purportedly controlled by the Individual Debtor's son that has historically paid many of the Individual Debtor's expenses… and has procured counsel for the Individual Debtor… (iii) a property holding company purportedly controlled by the Individual Debtor's wife, which owns the

---

[4] The bankruptcy court noted that the "first five factors are relevant towards the element of domination and control." The decision cited by the bankruptcy court for these factors, *Universitas Educ., LLC v. Benistar*, explained that they bear on whether the "single economic entity" prong for veil-piercing had been satisfied, which the court defined as whether "the owner and his corporation operated as a single economic entity." 2021 U.S. Dist. LEXIS 47804 at *24 (D. Conn. Mar. 15, 2021) (citation omitted). Here, the owner of HK USA is Ms. Guo, and yet the bankruptcy court applied these factors to establish the Individual Debtor's domination and control over HK USA. This is yet another inferential leap.

46

Greenwich mansion where the Debtor resides; and (iv) entities involved in the Individual Debtor's media and cryptocurrency business." SA-059. The bankruptcy court also relied on the fact that the Individual Debtor listed the family office address as his address on his Chapter 11 petition.

While these facts certainly establish a connection between the Individual Debtor and HK USA, they are not proof positive that the Individual Debtor dominated and controlled HK USA. Making this factual determination requires weighing evidence (against the non-movants) and drawing inferences (against the non-movants) which cannot be done on summary judgment. Indeed, it is only the trier of fact, after a full trial, that can decide whether this collection of circumstantial evidence justifies the ultimate conclusion that the Individual Debtor dominated and controlled HK USA such that its veil should be reverse pierced.

The bankruptcy court also relies on the fact that "Ms. Guo affirmed the testimony of former captains and managers of the Lady May who stated that overwhelmingly the Individual Debtor – not Ms. Guo – had the benefit of use of the Lady May." SA-059 (citing Bankr. D. Conn., 5:22-ap-5003-JAM, ECF No. 209, Exhibit 2 (Tr. 92:8-107:17)). That testimony supports, at most, that (i) the Individual Debtor spent more time on the Lady May than Ms. Guo during the three-month period of July, August, and September 2020, during the height of the global pandemic, and (ii) that the then captain of the Lady May would follow directions

47

from the Individual Debtor, and other guests who were permitted to use the Lady May, regarding the Lady May's movement on any given day when they were permitted to be on the boat. *Id*. Once again, the bankruptcy court, inserting itself into the role of a trier of fact, drew an inference against the HK Parties to conclude that this amounted to the Individual Debtor's "overwhelming… benefit of the use of the Lady May," despite the existence of contrary evidence.

The HK Parties submitted evidence establishing that Ms. Guo's brother purchased the Lady May for Ms. Guo in January 2015 after she was released from the custody of the CCP, which had held her as a political prisoner and tortured her. JA-0130. They also provided sworn testimony that Ms. Guo, not the Individual Debtor, was "solely responsible for directing the Lady May's movements," and the captain of the Lady May's sworn testimony that many of the guests who visited the Lady May, not just the Individual Debtor, were permitted to give direction about where they wanted the boat to visit on any given day. JA-0560; Bankr. D. Conn., 5:22-ap-5003-JAM, ECF No. 209, Exhibit 2 (Tr. 106:8-14). Moreover, there is no evidence in the record establishing the Individual Debtor's use of the Lady May other than during three months in the summer of 2020.

The bankruptcy court also relied upon a plan of reorganization of the Individual Debtor that provided for HK USA to pledge the Lady May to a creditor trust upon consummation of the proposed plan for the benefit of the Individual

48

Debtor's creditors. SA-059. A proposed plan of reorganization is merely a settlement offer. *See e.g.*, *Conway v. Silesian-American Corp.*, 186 F.2d 201, 212 (2d Cir. 1950). The fact that Ms. Guo authorized HK USA to offer the Lady May as consideration to settle all of her father's debts, the largest of which had already gone to judgment— and that provided her, her family, and HK USA with general releases—cannot be considered against her or HK USA on summary judgment to suggest that she does not own HK USA or, through it, the Lady May. *See* Fed. R. Evid. 408. If anything, the competing inferences that could reasonably be drawn from HK USA's offer to use the Lady May to fund the Individual Debtor's plan of reorganization demonstrate that there is a genuine issue of material fact precluding summary judgment.

As to the remaining two traditional alter ego factors, the bankruptcy court acknowledged, as it had to, that there was no evidence that funds had been siphoned from HK USA by its member (or anyone else). SA-060. As to insolvency, HK USA held title to the Lady May and the Lady May II. HK USA had posted $37 million to secure the Lady May's return which, if drawing reasonable inferences in favor of HK USA, would support concluding that, at the very least, the Lady May had substantial value. HK USA borrowed the $37 million, but it, the $37 million, was held in escrow. HK USA caused the Lady May to be delivered to the navigable waters of Connecticut and so there was no risk of non-performance and loss of the $37 million intended to guarantee the Lady May's return. There was no evidence of

49

any other liabilities owed by HK USA. Nevertheless, the bankruptcy court concluded that "HK USA's positions on these issues would tend to establish insolvency." SA-060. The bankruptcy court weighed the evidence and found against the HK Parties as to this factor not after trial on the merits but when considering the Trustee's motion for summary judgment against them.

**B. The Fraud and Similar Injustice Factors Raise Genuine Issues of Material Fact.**

In assessing the fraud or similar injustice factors, the bankruptcy court made further inferences against the HK Parties from otherwise neutral facts to conclude HK USA's corporate structure was perpetrating a fraud or similar injustice.

The bankruptcy court cited only two facts in support of its fraud finding: (i) HK USA, a closely held corporation, exists only to hold the Lady May and the Lady May II; and (ii) "HK USA is held in the name of Ms. Guo, a relative of the person who beneficially owns and controls those assets – the Individual Debtor." SA-061. The bankruptcy court then concluded that because these would be considered badges of fraud in the fraudulent transfer context, they are therefore "indicia of injustice wrought by the corporate form." SA-061. The bankruptcy court then admits to doing what it is not permitted to do: it found that these facts "support the *inference* that it was the Individual Debtor's intent" to prevent his creditors from executing on their judgment. SA-061 (emphasis added).

50

It is not a badge of fraud in the fraudulent transfer context for a closely-held entity to own a single asset. Indeed, even the case cited by the bankruptcy court, *In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983), states that the badge of fraud is "the creation *by an oppressed debtor of a closely-held corporation to receive the transfer of his property.*" *Id*. at 1582 (quoting 4 *Collier on Bankruptcy* para. 548.02[5] at 548-34 to 38 (L. King 15th ed. 1983)) (emphasis added). Nothing in the record supports a finding that the Individual Debtor created HK USA. Relatedly, the bankruptcy court relied on its erroneous collateral estoppel holding set forth in the First Summary Judgment Order to conclude that the Lady May (or the Lady May II) was solely owned by the Individual Debtor.

## C. The Legitimate Expectations of HK USA's Owner and Creditor Raise Genuine Issues of Material Fact.

The bankruptcy court concluded that "reverse veil-piercing will not harm the legitimate expectations of HK USA's owners," because "Ms. Guo has no expectation of use or control of the Lady May or Lady May II." The bankruptcy court reached this factual conclusion in the face of competing evidence including the evidence submitted by the HK Parties reflecting HK USA's legitimate ownership of the Lady May. While the bankruptcy court relied on collateral estoppel and the First Summary Judgment Order to support the factual conclusion that the Individual Debtor solely owned the Lady May, the HK Parties appealed that decision to this Court and for the reasons set forth herein believe that it should be reversed. Deciding Ms. Guo's

51

legitimate expectations under all of the circumstance presented here inherently involves making a credibility determination.

With respect to the $37 million of Escrow Funds, the legitimate expectations held by HK USA's owner, Ms. Guo, and creditor, Himalaya (who made the $37 million Himalaya Loan), were clearly established by the Lady May Stipulation whereby $37 million was pledged to secure the return of the Lady May to the navigable waters of Connecticut, where it would remain until the bankruptcy court decided and entered a final order concerning whether the Lady constituted property of the Individual Debtor's bankruptcy estate. The Lady May Stipulation provided, in pertinent part:

> **WHEREAS**, to secure HK USA's performance of the Delivery Obligation (as defined below), HK USA has entered into that certain Escrow Agreement appended hereto as **Exhibit A** with U.S. Bank National Association (the "Escrow Agent"), and HK USA has deposited with the Escrow Agent the "Escrow Funds" (as that term is defined and provided for in the Escrow Agreement) in the amount of Thirty-Seven Million ($37,000,000) Dollars, subject to the terms and conditions of this Order and the Escrow Agreement; and

> **WHEREAS**, HK USA, PAX, the Debtor and the Official Committee of Unsecured Creditors (the "Committee") appointed in this case, and the creditors, Rui Ma and Zheng Wu, each acting by and through their respective counsel, stipulate and consent to the entry of this Order and resolution of the Stay Relief Motion as set forth herein;

52

JA-0166. The bankruptcy court "SO ORDERED" the Lady May Stipulation on April 29, 2022. SA-0173.

The "Delivery Obligation" required the return of the Lady May to the navigable waters of Connecticut on or before July 15, 2022, which HK USA timely performed. The Lady May Stipulation required the satisfaction of certain additional "Certification Conditions," performance of which would be verified by a "HK USA Certification" filed with the bankruptcy court and then, "[i]f no timely Objection is filed" with the bankruptcy court to the HK USA Certification, "then HK USA may provide a copy of the duly filed HK USA Certification to the Escrow Agent in accordance with the Escrow Agreement whereupon the Escrow Agent shall immediately release and transfer the Escrow Funds to HK USA in accordance with the Escrow Agreement." JA-0168.

Ms. Guo and Himalaya's expectations based on the unequivocal terms of the court-approved Lady May Stipulation were crystal clear. Indeed, the bankruptcy court agreed with these expectations during a hearing held on August 30, 2022:

> MR. KINDSETH: … [The Lady May] is a hundred percent staying here. The captain and the yacht management company are holding it.
>
> What was contemplated was that this court would move forward with the litigation over whether the yacht is property of the estate. If the Court determines by final order that the yacht's property of the estate, it will be here.

53

If Your Honor rules that it's not property of the estate, and Your Honor releases it accordingly from this court's jurisdiction, then the yacht will go on its way.

But that is exactly what the parties contemplated. It wasn't to get the $37 million and the yacht.

THE COURT: I agree with you on that.

MR. KINDSETH: Right.

THE COURT: I'm not having a disagreement on that issue.

MR. KINDSETH: Right. So the only question is –

THE COURT: I'm having – all I'm asking you is – I should stop. I don't – I agree with you. I don't – I believe and agree that the stipulation was not that $37 million and the yacht.

JA-0936 (Tr. 38:15-39:11).

In the face of the court-ordered Lady May Stipulation and the bankruptcy court's own acknowledgement in open court, the bankruptcy court found that Ms. Guo had no legitimate expectation to use the Escrow Funds "because (i) the funds are in escrow pending further order of the [bankruptcy court]; and (ii) the funds were received as a loan, which Ms. Guo allegedly personally guaranteed." SA-065. Putting aside, for the moment, that once again the bankruptcy court is drawing inferences against the non-movants, the inferences drawn are completely non-sensical. While the Escrow Funds were subject to further order of the bankruptcy court, the HK Parties and Himalaya legitimately expected that such subsequent order

54

would be consistent with and in compliance with the Lady May Stipulation. The HK Parties further legitimately expected that the release of the $37 million Escrow Funds to HK USA as provided in the Lady May Stipulation would enable HK USA to repay the Himalaya Loan and thereby relieve Ms. Guo of her personal guaranty of that obligation.

The bankruptcy court also found that "reverse veil-piercing will also not harm the legitimate expectations of HK USA's creditors" because Himalaya "knew or should have known the loan was risky…." SA-066. Once again, this is inappropriate at the summary judgment stage and non-sensical. Even if Himalaya knew or should have known that the Himalaya Loan was risky (an inference on the bankruptcy court's part against the non-movants), the bankruptcy court should have drawn the reasonable inference in the non-movants' favor that Himalaya legitimately expected the bankruptcy court to comply with its own order—a fact that should have been self-evident.

Applying reverse veil-piercing in this context to disregard the legal separateness of HK USA clearly violates the legitimate expectations of HK USA's owner, Ms. Guo, and creditor, Himalaya. In establishing the reverse veil-piercing doctrine under Delaware law, the Chancery Court in *Manichaean* made clear that "[o]nly in cases alleging egregious facts, coupled with the lack of real and substantial prejudice to third-parties, should the court even consider utilizing the reverse veil-

55

piercing doctrine." 251 A.3d at 714. Pertinent here, the questions of legitimate expectations and prejudice to third-parties, at the very least, raise genuine issues of material fact completely inappropriate for summary judgment.

**D.     The Public Convenience Factor Raises Genuine Issues of Material Fact.**

In applying the final consideration, the "public convenience" factor, the bankruptcy court made two points. The first is that "reverse veil-piercing will allow recovery to the Individual Debtor's creditors where otherwise it remains uncertain." SA-066. The second is that "HK USA only serves to shield assets beneficially owned and controlled by the Individual Debtor from the Individual Debtor's creditors." SA-066. Of course, both of these points assume the correctness of the bankruptcy court's reasoning and conclusions reached in the First Summary Judgment Order and the Second Summary Judgment Decision and Order which the HK Parties challenge here on appeal. Moreover, *Manichaean* instructs a court to balance "policies served by allowing a reverse veil-pierce under the particular circumstances involved" against "the social value of upholding the legitimate expectations of the affected corporate creditors or debtors, applying a rebuttable presumption in favor of assuring such expectations." *See Manichaean*, 251 A.3d at 715.

The HK Parties did not receive the benefit of any "rebuttable presumption." They did not receive the benefit of an examination of the evidence in the light most favorable to them. Reasonable inferences were not drawn in their favor. Evidence

56

was weighed against them. Based on the foregoing, the bankruptcy court granted summary judgment against the HK Parties, determining that "there is no genuine dispute of material fact and that the Trustee is entitled to judgment as a matter of law that HK USA is the alter ego of Individual Debtor." SA-066. This conclusion was reached by the bankruptcy court in error and this Court should reverse.

## CONCLUSION

For the forgoing reasons, this Court should reverse the District Court Order that affirmed the bankruptcy court's summary judgment orders and remand this case back to the bankruptcy court for further proceedings on the First Counterclaim and, as to the Second Counterclaim, with instructions to dismiss it due to the Trustee's lack of standing or, in the alternative, for further proceedings.

Respectfully submitted,

HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, and MEI GUO

/s/ *Stephen M. Kindseth*
Stephen M. Kindseth, Esq. (Fed. Bar No. ct14640)
James M. Moriarty, Esq. (Fed. Bar. No. ct21876)
Daniel A. Byrd, Esq. (Fed Bar. No. ct31151)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06605
Tel. 203-368-4234
Fax. 203-368-5478
Email: skindseth@zeislaw.com
        jmoriarty@zeislaw.com,
        dbyrd@zeislaw.com

January 2, 2025          Their Attorneys

57

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation of L.R. 32.1(a)(4) because it contains 13,969 words as counted using Microsoft Word, excluding parts exempted by Fed. R. App. P. 32(f). Further, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(a) because this brief was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

/s/ *Stephen M. Kindseth*
Stephen M. Kindseth, Esq. (Fed. Bar No. ct14640)

58

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 2, 2025, the foregoing was filed with the Clerk of the Court for the United States Court of Appeal for the Second Circuit by using the appellate ACMS system. Participants in the case are registered ACMS users and service will be accomplished by the appellate ACMS system.

/s/ *Stephen M. Kindseth*
Stephen M. Kindseth, Esq. (Fed. Bar No. ct14640)