# 24-2504-cv

## United States Court of Appeals

*for the*

## Second Circuit

IN RE: KWOK,

*Defendant.*

MEI GUO,

*Counter-Defendant-Appellant,*

HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC,

*Plaintiff-Counter-Defendant-Appellant,*

– v. –

LUC A. DESPINS, Chapter 11 Trustee,

*Defendant-Counter-Claimant-Appellee,*

UNITED STATES TRUSTEE,

*Trustee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF FOR DEFENDANT-COUNTER-CLAIMANT-APPELLEE

NICHOLAS A. BASSETT
PAUL HASTINGS, LLP
2050 M Street, NW
Washington, DC 200036
(202) 551-1700

DENNIS M. CARNELLI
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
(203) 821-2000

*Attorneys for Defendant-Counter-Claimant-Appellee*

 COUNSEL PRESS    (800) 4-APPEAL • (379985)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1(c) of the Federal Rules of Appellate Procedure, Appellee, Luc A. Despins, Chapter 11 Trustee for the estate of Ho Wan Kwok, by and through his undersigned counsel, hereby states:

The Debtors in the above-referenced chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595) (the "Debtor"), Genever Holdings LLC (last four digits of tax identification number: 8202), and Genever Holdings Corporation.

None of the Debtors is a party to this appeal.

Genever Holdings Corporation was 100% owned by the Debtor, and, thus, the Trustee (as defined *infra*) holds all of the Debtor's economic and governance rights with respect to Genever Holdings Corporation.

Genever Holdings LLC is a wholly owned subsidiary of Genever Holdings Corporation.

i

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT.................................................i

TABLE OF AUTHORITIES................................................................ v

INTRODUCTION ........................................................................ 1

COUNTERSTATEMENT OF THE ISSUES................................................5

COUNTERSTATEMENT OF THE CASE.................................................5

    I.    The Chapter 11 Case.................................................5

    II.   The Lady May and HK USA....................................... 6

    III.  HK USA was a shell company to hold the Lady May ........... 8

    IV.  PAX's Litigation Against Debtor in New York
          Supreme Court .................................................... 9

    V.   Failure to Return Lady May to U.S. Territorial
          Waters and Subsequent Contempt Fines ........................... 10

    VI.  Final Contempt Hearing in New York and
          Participation by Appellants................................... 12

    VII. Chapter 11 Case and HK USA Adversary ........................... 16

    VIII. Lady May Stipulation and Purported $37 Million
          Loan ................................................................ 18

    IX.  Trustee's Counterclaims in HK USA Adversary ................. 21

    X.   The Bankruptcy Court grants Trustee's Motion for
          Partial Summary Judgment on First Counterclaim ............ 22

    XI.  The Bankruptcy Court grants Trustee's Motion for
          Partial Summary Judgment on Second Counterclaim........ 23

    XII.  The District Court Appeal and Affirmance........................... 26

STANDARD OF REVIEW................................................................ 31

SUMMARY OF ARGUMENT ............................................................ 31

ARGUMENT ................................................................................ 34

I. The District Court properly affirmed the Bankruptcy Court order entering summary judgment on the Trustee's second counterclaim that HK USA is the Debtor's alter-ego ............................................................... 34

    A. Appellants' argument that the Trustee lacks "standing" to maintain the Second Counterclaim has been waived and, in any event, lacks merit .......................................................... 34

    B. Trustee has "standing" to assert a reverse veil-piercing claim under 11 U.S.C. § 544(a) ...................... 36

    C. The Bankruptcy Court properly found no genuine dispute of material fact as to Trustee's Second Counterclaim that HK USA is Debtor's alter-ego ...................................................................... 40

        1. Legal principles governing Second Counterclaim ...................................................... 41

        2. Direct relationship between Debtor and HK USA is not necessary for reverse veil-piercing under Delaware Law ............................ 42

        3. The Bankruptcy Court correctly determined the absence of a genuine dispute as to any material fact regarding the "traditional alter-ego factors" ...................... 44

        4. The Bankruptcy Court correctly determined that the absence of a genuine dispute as to any material fact regarding the fraud and similar injustice factor ................. 50

        5. The Bankruptcy Court correctly determined that the absence of a genuine dispute as to any material fact regarding the legitimate expectations of Ms. Guo .............. 52

iii

6. The Bankruptcy Court correctly determined that the public convenience factor favored reverse veil-piercing ................... 54

II. The District Court properly affirmed the First SJ Order granting the chapter 11 estate ownership of the Lady May based on collateral estoppel .......................... 56

   A. The Bankruptcy Court correctly determined that there was no genuine issue of material fact that the New York Court necessarily decided the issue of ownership of the Lady May ..................... 57

   B. The Bankruptcy Court correctly determined that there was no genuine issue of material fact that Appellants and the Debtor were in privity such that Appellants had a full and fair opportunity to litigate the issue of the Lady May's ownership in the New York Action .................. 61

CONCLUSION ................................................................................. 67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016) ..................................................................35

*Caplin v. Marine Midland Grace Trust Co.*,
406 U.S. 416 (1972) .............................................................................39

*Carol v. Madison Plaza Apartment Corp.*,
No. 156730/13, 2014 WL 6471482 (N.Y. Sup. Ct. Nov. 18, 2014) .......62

*Coleman v. J.P. Morgan Chase Bank N.A.*,
136 N.Y.S.3d 911 (App. Div. 2021) ......................................................64

*D'Arata v. New York Cent. Mut. Fire Ins. Co.*,
76 N.Y.2d 659 (1990)......................................................................57, 58

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) .............................................................................35

*Eugenia VI Venture Holdings, Ltd. v.
Maplewood Holdings LLC (In re AMC Invs., LLC)*,
524 B.R. 62 (Bankr. D. Del. 2015) .......................................................57

*Evans v. Ottimo*,
469 F.3d 278 (2d Cir. 2006) .................................................................58

*In re Bradley*,
501 F.3d 421 (5th Cir. 2007)................................................................34

*In re Harman*,
529 B.R. 352 (Bankr. N.D. Ga. 2015)...................................................39

*In re Kwok*,
640 B.R. 514 (Bankr. D. Conn. 2022).....................................................6

*In re Kwok*,
No. 22-50073 (JAM),2023 WL 2962662,
(Bankr. D. Conn. Apr. 14, 2023).....................................................24, 25

*In re Kwok*,
Bankr. D. Conn. No. 22-50073, Mei Guo Deposition Transcript,
01/20/2023, ECF No. 1529, 3/9/2023 ....................................................20

*In re Kwok,*
   No. 3:24-CV-724 (KAD), 2025WL 252855
   (D. Conn. Jan. 21, 2025) .......................................................................13

*In re N. New England Tel. Operations LLC,*
   795 F.3d 343 (2d Cir. 2015) ...............................................................31

*In re Reyes-Colon,*
   922 F.3d 13 (1st Cir. 2019) ...............................................................34

*Juan C. v. Cortines,*
   89 N.Y.2d 659 (1997)...........................................................................61

*June Med. Servs. L. L. C. v. Russo,*
   591 U.S. 299 (2020) .............................................................................35

*Koch Refining v. Farmers Union Cent. Exch., Inc.,*
   831 F.2d 1339 (7th Cir. 1987)...........................................................37

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) .............................................................................35

*Major League Baseball Properties, Inc. v. Salvino, Inc.,*
   542 F.3d 290 (2d Cir. 2008) ...............................................................46

*Manichaean Capital, LLC v. Exela Techs., Inc.,*
   251 A.3d 694 (Del. Ch. 2021) .................................................... *passim*

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC,*
   537 F.3d 168 (2d Cir. 2008) ...............................................................42

*Official Comm. of Unsecured Creditors v.*
   *Morgan Stanley & Co. (In re Sunbeam Corp.),*
   284 B.R. 355 (Bankr. S.D.N.Y. 2002) ...............................................43

*Official Comm. of Unsecured Creditors v.*
   *Reliance Capital Grp., Inc. (In re Buckhead Am. Corp.),*
   178 B.R. 956 (D. Del. 1994) ........................................................ 43, 44

*Phoenix Light SF Ltd. v. Bank of New York Mellon,*
   66 F.4th 365 (2d Cir. 2023)................................................................56

*Picard Trustee for SIPA Liquidation of Bernard L. Madoff Investment*
   *Securities LLC v. JABA Associates LP,*
   49 F.4th 170 (2d Cir. 2022).................................................................31

*Picard v. JPMorgan Chase & Co.,*
   460 B.R. 84 (S.D.N.Y. 2011) ......................................................... 39, 40

*Pope v. Enzo Biochem, Inc.,*
   432 F. App'x 7 (2d Cir. 2011) ............................................................. 62

*Shearson Lehman Hutton Inc. v. Wagoner,*
   944 F.2d 114 (2d Cir. 1991) ............................................. 24, 37, 39, 40

*Stadtmaurer v. Tulis (In re Nordlicht),*
   115 F.4th 90 (2d Cir. 2024) ........................................................... 38, 39

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,*
   884 F.2d 688 (2d Cir. 1989) .......................................................... 36, 37

*Titan Real Estate Ventures, LLC v.*
   *MJCC Realty Ltd. P'ship (In re Flanagan),*
   415 B.R. 29 (D. Conn. 2009) ................................................................ 37

*Truck Drivers Loc. 807, Int'l Bhd. of Teamsters, Chauffeurs,*
   *Warehousemen & Helpers of Am. v. Carey Transp. Inc.,*
   816 F.2d 82 (2d Cir. 1987) .................................................................. 35

*United States v. Olson,*
   4 F.3d 562 (8th Cir. 1993) ............................................................. 34-35

*United States v. Wang,*
   2023 WL 4551637 (S.D.N.Y. 2023) ..................................................... 20

*Universitas Education, LLC v. Benistar,*
   No. 3:20-cv-00738 (JAM),
   2021 WL 965794 (D. Conn. Mar. 15, 2021) ........................................ 41

*Watts v. Swiss Bank Corp.,*
   27 N.Y.2d 270 (1970) ........................................................................... 62

*Wells Fargo Bank, N.A. v. First Republic Bank (In re Salander),*
   503 B.R. 559 (S.D.N.Y. 2013) ............................................................. 37

## Statutes & Other Authorities:

11 U.S.C. § 541 ........................................................................... *passim*

11 U.S.C. § 542 ..................................................................... 21, 46

11 U.S.C. § 544 ................................................................ *passim*

11 U.S.C. § 544(a) ........................................................... *passim*

11 U.S.C. § 544(a)(1) ............................................................ 36

## INTRODUCTION

This appeal arises out of the chapter 11 bankruptcy case of Ho Wan Kwok ("Kwok" or the "Debtor"), a self-described billionaire who was recently convicted by a federal jury on fraud and racketeering charges. Kwok filed his bankruptcy case in Connecticut in February 2022 to avoid the consequences of a contempt order that a New York state court had entered against him less than a week earlier based on Kwok's attempt to move his mega yacht, the *Lady May*, outside U.S. waters to avoid it being used to satisfy the money judgment his largest creditor had obtained against him. Once in bankruptcy, Kwok claimed to have only a few thousand dollars to his name despite having for years flaunted his vast wealth and enjoyed all the trappings of luxury. Kwok's creditors, which include victims of his various criminal schemes, have meanwhile filed billions of dollars in claims against his estate.

Given the incongruity between Kwok's lavish lifestyle and the paltry assets he identified in his court filings, in July 2022, the bankruptcy court appointed the Appellee, the chapter 11 trustee (the "Trustee"), to conduct an in-depth investigation into Kwok's affairs and, where appropriate, pursue litigation to recover assets for the benefit of

1

his creditors. The Trustee has since spent nearly three years unraveling the vast shell game Kwok has used to hide his most valuable assets from creditors. These efforts have been resoundingly successful, resulting in the recovery of more than $100 million in value for Kwok's creditors, including the *Lady May* and the $37 million at issue in this appeal.

Kwok held the *Lady May* in the same manner he typically held all of his material assets: by using a shell company to hold nominal title to the asset and then placing ownership of the shell company in the name of a family member, friend, or employee. In the case of the *Lady May*, Kwok's daughter, Appellant Mei Guo, served as the nominal owner of Appellant HK International Funds Investments (USA) Limited, LLC USA ("HK USA"), which formally held the yacht's title. Notwithstanding this formal ownership structure, the bankruptcy court concluded in two separate summary judgment decisions that (i) Kwok was the true beneficial owner of the *Lady May* and (ii) HK USA was his alter ego, such that all of HK USA's property, including the *Lady May* and $37 million it obtained pursuant to a purported loan agreement during the bankruptcy case, is property of the chapter 11 estate. The district court affirmed the bankruptcy court's decisions.

2

The bankruptcy court properly based its first decision on collateral estoppel because, prior to the bankruptcy case, Appellants already litigated the issue of Kwok's ownership of the *Lady May* in the New York state court litigation against Kwok.  Specifically, as part of the contempt proceedings in that litigation, Appellants participated in an evidentiary hearing held by the New York court to determine whether Kwok, as opposed to Appellants, owned and controlled the *Lady May*, such that Kwok could be held in contempt of court for moving the yacht outside U.S. waters.  At the conclusion of the hearing, the New York court found, based on the evidence presented to it (including Appellant Mei Guo's testimony) that Kwok owned and controlled the *Lady May*.

Because the New York court decided the same issue that was later presented to the bankruptcy court—*i.e.*, ownership and control of the *Lady May*—and because Appellants fully participated in the New York litigation, the bankruptcy court properly found that collateral estoppel barred Appellants from relitigating the issue.  Appellants' arguments to the contrary misapply New York law and misrepresent the nature of the state court proceedings.  The record is clear that Appellants litigated the ownership issue once and lost; they were not entitled to a redo.

3

The bankruptcy court also properly found in its second summary judgment decision that no genuine dispute of material fact existed on the Trustee's claim that HK USA was Kwok's alter ego. The record demonstrated, among other things, that Kwok was the one who enjoyed the *Lady May's* use and directed its movements, that HK USA had no operations, employees, or revenues, that it had no bank account, that it had never filed tax returns, and that it shared office space with Kwok's other shell companies. Perhaps most tellingly, when the Trustee discovered that HK USA held title to another yacht, the *Lady May II*, Appellant Mei Guo had no knowledge of such ownership—ignorance that would be utterly implausible if she actually controlled HK USA.

For these reasons, the bankruptcy court properly concluded that HK USA was Kwok's alter ego. As the district court recognized, the alter ego finding in the bankruptcy court's second summary judgment decision rendered the collateral estoppel ruling in the first summary judgment order effectively moot, because the alter ego finding resulted in all property of HK USA, including the *Lady May*, becoming property of the estate. Nevertheless, the district court proceeded to determine that the collateral estoppel ruling was also correct, and therefore provided an

4

independently sufficient basis for treating the *Lady* May as property of the estate. Like the district court, the Trustee addresses the second summary judgment decision first below for this reason. Ultimately, however, both bankruptcy court decisions were correct, and thus the orders of the bankruptcy court and the district court should be affirmed.

## COUNTERSTATEMENT OF THE ISSUES

1.    Did the district court properly affirm the bankruptcy court's order granting summary judgment on the Trustee's Second Counterclaim that HK USA is the Debtor's alter-ego, such that all of its property, including the *Lady May*, is property of the estate?

2.    In the event that HK USA is not the Debtor's alter ego, did the district court properly affirm the bankruptcy court's order granting summary judgment on the Trustee's First Counterclaim that the Debtor beneficially owned the *Lady May* based on collateral estoppel?

## COUNTERSTATEMENT OF THE CASE

### I.    The Chapter 11 Case

The Debtor, Kwok, filed for bankruptcy in the United States Bankruptcy Court for the District of Connecticut (the "<u>Bankruptcy Court</u>") on February 15, 2022. The Bankruptcy Court subsequently

appointed the Trustee to administer the case and conduct a comprehensive investigation into the Debtor's assets and affairs due to, among other things, the United States Trustee's concerns about the "odd combination of what appears to be artificial self-created poverty by the Debtor to insulate himself from creditors and the Debtor's filing of this case to obtain protection from creditors owed millions." *In re Kwok*, 640 B.R. 514, 517 (Bankr. D. Conn. 2022) (cleaned up).

To date, the Trustee has recovered over $100 million in assets over which the Debtor disclaimed ownership. At the time of the Trustee's appointment, Mei Guo, the Debtor's daughter ("Ms. Guo"), claimed to own HK USA, as well the Debtor's yacht, the *Lady May*, through HK USA.

## II.     The *Lady May* and HK USA

The *Lady May* is a yacht built in 2014. JA-0232.[1]  It was acquired for €28 million in 2015 by Hong Kong International Funds Investments Limited ("HK International"), an entity founded by the Debtor in 2006. JA-0521, p. 43, ¶¶ 6–11; JA-0549.

---

[1]Citations herein to "JA-1" through and including "JA-1223" are to the Joint Appendix. *See* Docket Entries 19.1–22.1.  Citations herein to "SA-001" through and including "SA-092" are to the Special Appendix. *See* Docket Entry 24.1.

The Debtor was the sole shareholder of HK International until 2014, when he transferred all of his interest therein to a trusted business associate, Qu Guo Jiao ("Ms. Qu"), for no consideration. JA-0549. In June 2017, at which point legal title to the *Lady May* resided with HK International, Ms. Qu transferred HK International to Ms. Guo for HK$1.00. JA-0549; JA-0262, ¶ 27; JA-1045, ¶ 27.

HK USA is a Delaware limited liability company formed in 2018. JA-0493. In 2019, HK USA executed a limited liability company agreement ("LLC Agreement") identifying Ms. Guo as HK USA's sole member. JA-0770–71; JA-0231. The LLC Agreement listed as Ms. Guo's address the location of an apartment where the Debtor lived prior to his arrest in March 2023. JA-0771. The LLC Agreement listed HK USA's principal office as 162 East 64th Street, New York, New York, JA-0770, an address that the Debtor used (including on his chapter 11 petition), JA-0002, as did his shell companies, Greenwich Land LLC JA-0776, Golden Spring (New York) Ltd. ("Golden Spring"), JA-0195–96; JA-0755–56, ¶ 4, GTV Media Group Inc., JA-0778–79, and Saraca Media Group Inc. JA-0792; SA-048, ¶ 5. It was also, for a time, the address of the Debtor's counsel, Lawall & Mitchell, LLC. *Id.*

7

In April 2020, record ownership of the *Lady May* was transferred from HK International to HK USA. SA-049, ¶ 6. Consequently, legal title to the *Lady May* resided with HK USA from April 2020, onwards. SA-049, ¶ 6.

## III.   HK USA was a shell company to hold the *Lady May*

Besides holding title to the *Lady May*, HK USA had no independent assets or operations or other indicia of corporate separateness. Appellants admitted that HK USA (i) has generated no revenue, JA-0223, JA-0805, JA-0807–08; (ii) has no directors, officers, or employees, JA-0807–08; (iii) has not filed tax returns, *id.*; (iv) has no bank account and has not otherwise been capitalized, JA-0233, JA-0807–08; and (v) maintains no documents other than those relating to the *Lady May*. SA-049, ¶ 7; JA-0201, ¶ 24; JA-0757–58, ¶¶ 7–8; JA-1017–18, ¶¶ 7–8.

Appellants and their counsel repeatedly represented to the Bankruptcy Court, including under penalty of perjury, that HK USA's only purported asset was the *Lady May*. SA-049–50, ¶ 9. For example, during a hearing in April 2022, counsel to HK USA represented that "my client's sole asset is the boat." JA-0822, p. 52, ¶¶ 17–18. Ms. Guo made the same representation under penalty of perjury, both in a declaration

submitted to the Bankruptcy Court, JA-0201, ¶ 24, and during a deposition. JA-0856, ¶¶ 2–7.

## IV. PAX's Litigation Against Debtor in New York Supreme Court

The Debtor's decision to file his chapter 11 petition stems from his effort to avoid paying a judgment of over $116 million to his largest creditor, PAX, which obtained the judgment in September 2020 in litigation it had commenced against the Debtor (the "New York Action") in the Supreme Court of the State of New York (the "New York Court"). JA-0437–45; JA-0447–50; JA-0452–53. PAX sought to enforce the judgment against assets that PAX believed were owned by the Debtor, including the *Lady May*.

On October 15, 2020, following a hearing regarding PAX's motion for a restraining order against the Debtor based on allegations he would dissipate his assets or seek to frustrate any future judgment, the New York Court entered a restraining order (the "October 2020 Restraining Order") providing that the Debtor "and/or the registered owners of . . . the yacht, 'the Lady May' are restrained from making or causing any sale, assignment, transfer, or interference with those assets." JA-0463–64.

In November 2020, PAX reported to the New York Court that the *Lady May* had departed U.S. waters and sailed to the Bahamas without the court's permission and in violation of the October 2020 Restraining Order.  JA-0466–68.  In December 2020, PAX moved to hold the Debtor in contempt.  JA-0470–71.

In March 2021, the New York Court issued a decision and order granting the motion (the "March 2021 Contempt Order").  JA-0473–75.  The New York Court found, among other things, that "there has been an intolerable amount of gamesmanship, dissembling, and deceit in proceedings before this Court relating to the whereabouts and ownership of the yacht 'Lady May.'"  JA-0474.  The New York Court then concluded that, "[r]ather than catalogue the many 'shell games' defendant Kwok has engaged in with the assistance of counsel who should know better," it would grant the motion for contempt, such that "every day that the yacht is outside the jurisdiction of this Court after May 15, 2021, defendant Kwok will be fined $500,000."  *Id.*

## V.  Failure to Return *Lady May* to U.S. Territorial Waters and Subsequent Contempt Fines

On May 27, 2021, the New York Court held a hearing in connection with PAX's efforts to obtain documents in discovery from Golden Spring.

10

JA-0477–81. At that hearing, Justice Ostrager again commented on the Debtor's constant "game of evasion," JA-0478, p. 8, ¶¶ 24–25, noting that he "leads a rather extravagant lifestyle, [yet] purports to have zero assets whatsoever." *Id.* at p. 10, ¶¶ 2–3.

In July 2021, PAX moved for a final contempt order against the Debtor in connection with the ongoing violation of the March 2021 Contempt Order (the "Final Contempt Motion"). JA-0483–91.

On July 19, 2021, together with the Debtor's opposition to the Final Contempt Motion (which was predicated on the factual assertion that the Debtor did not own the *Lady May*), counsel to HK USA, Lee Vartan, filed an "Affirmation" in opposition to the Final Contempt Motion (the "Vartan Affirmation"). JA-0493–99. The primary purpose of the Vartan Affirmation was to argue and purport to set forth evidence that HK USA, not the Debtor, owned the *Lady May*.

On July 21, 2021, the New York Court held a preliminary hearing on the Final Contempt Motion, at which Mr. Vartan appeared as counsel for HK USA for the purpose of protecting HK USA's alleged ownership of the *Lady May*. JA-0501–05. At the hearing, Justice Ostrager stated that, "although it would seem that [PAX's counsel] has made more than a

11

prima facie showing that all of these entities that allegedly control the ship are controlled by Mr. Kwok," a further record was necessary "on the issue about ownership of the ship" to support a final order of civil contempt. JA-0504, p. 13, ¶¶ 16–23.

## VI.  Final Contempt Hearing in New York and Participation by Appellants

On November 9, 2021, the Supreme Court of the State of New York Appellate Division, First Judicial Department (the "Appellate Division"), rejected the Debtor's appeal of the March 2021 Contempt Order, finding that the New York Court had acted within its discretion in holding defendant in civil contempt where PAX had established by clear and convincing evidence that the Debtor violated a court order. JA-0509. The Appellate Division concluded its order by instructing Justice Ostrager "to proceed *with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht*, and to assess appropriate penalties." Id. (emphasis added). On February 2, 2022, the New York Court held such an evidentiary hearing (the "Final Contempt Hearing"). JA-0511–35. Mr. Vartan appeared at the Final Contempt Hearing as counsel to Appellants. JA-0520, pp. 37–38; JA-0543. Prior to the hearing, the

12

Debtor submitted declarations of certain former and present captains of the *Lady May*, and Ms. Guo. JA-0512–13, pp. 5–10.

Appellants and the Debtor coordinated closely at the hearing. At the start of the hearing, counsel for the Debtor informed the court that "[t]he first several witnesses are witnesses for [HK USA], the owner of the vessel. And Lee Vartan will be presenting those witnesses for cross-examination." JA-0520, p. 37, ¶¶ 7–9. Mr. Vartan then presented four witnesses (all but one of the witnesses offered for the defense) and made evidentiary objections in defending these witnesses before "turn[ing] things back over to [the Debtor's counsel]" before the conclusion of the hearing. JA-0534, p. 96, ¶¶ 13–14; JA0522, p. 45, ¶¶ 9–12; JA-0525, p. 58, ¶¶ 7–11, 18–25; JA-0525, p. 60, ¶¶ 18–24. The Debtor's counsel and Appellants' counsel were paid by the same, Debtor-linked shell company, Golden Spring.[2] JA-0526–27, pp. 64–65; JA-0606–07.

Through Ms. Guo's affirmation, tendered by Mr. Vartan as her direct testimony, and her detailed live testimony during cross examination, Ms. Guo sought to prove her purported ownership of HK

---

[2]In a separate adversary proceeding, Golden Spring has since been adjudged the Debtor's alter-ego. *In re Kwok*, No. 3:24-CV-724 (KAD), 2025 WL 252855, at *1 n.2 (D. Conn. Jan. 21, 2025).

USA and the *Lady May*. JA-0520. For example, she averred that "I am the owner of the yacht, the 'Lady May,' [and] have been . . . since in or about June 2017." JA-0557–61. She further claimed that her brother purchased the yacht for her given her "love for the ocean." JA-0559. She asserted that she "alone [is] responsible for directing the *Lady May*'s operations" and its "movements," *id.*; JA-0560, and "it was [her] decision for the boat to travel from New York to Florida in October 2020, not [her] father's." *Id.*

On February 9, 2022, Justice Ostrager imposed a $134 million contempt fine on the Debtor (the "Final Contempt Decision"). JA-0546–55. Justice Ostrager explained that the issue before him, as set forth in the Appellate Division's mandate, was whether the Debtor beneficially owned and controlled the *Lady May*. JA-0548 ("[p]ursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022 evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the yacht"). And Justice Ostrager resolved that issue against the Debtor and Appellants, determining that the Debtor—not HK USA, his daughter, or anyone else—owned and controlled the *Lady May*. JA-0553–54. Specifically, Justice Ostrager found that the Debtor

14

"exercised dominion and control over" the *Lady May*, JA-0547, despite it being nominally owned by HK USA. In fact, Justice Ostrager concluded that "Kwok has much *more* than a beneficial interest in the *Lady May*. Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht." JA-0553 (emphasis added).

The Debtor's ownership of the *Lady May*, Justice Ostrager noted, was consistent with his broader "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members." JA-0546. This "scheme," he observed, allowed the Debtor, "a self-declared multi-billionaire," "to assert that he has no assets despite his lavish lifestyle." *Id.*

In reaching his decision, Justice Ostrager specifically acknowledged, and rejected, the testimony of Ms. Guo. JA-0551–52. He found that her testimony "that she owns and controls the Lady May *cannot be credited in any respect*."[3] *Id.* (emphasis added). He concluded that she "introduced no evidence that she exercised dominion and control

---

[3]Ms. Guo later invoked her Fifth Amendment privilege against self-incrimination on the issue of whether she owned the *Lady May* and other assets of the Debtor. *See* JA-0739–49.

15

of the *Lady May*, and provided no confirmation that she came into possession of the *Lady May*, other than as a ruse to shield the *Lady May* from being levied upon by her father's creditors." JA-0552. In fact, Ms. Guo's and other witnesses' testimony had the opposite of its intended effect, with Justice Ostrager observing that "the testimony adduced at the hearing out of the mouths of defendants' witnesses [including those presented by Mr. Vartan] clearly and convincingly demonstrated that Kwok beneficially owns and controls the *Lady May* and has utter contempt for this Court and the judicial process." JA-0549.

In addition, although Ms. Guo contended that her brother purchased the *Lady May* for her as a gift, in response to a question from the New Your Court, she confirmed unequivocally that her brother "was not involved in any of the transfers before [she] acquired the boat." JA-0522, pp. 46–47.

## VII.  Chapter 11 Case and HK USA Adversary

On February 15, 2022, less than a week after entry of the $134 million contempt judgment based on the Debtor's flouting of the New York Court's order regarding the *Lady May*, the Debtor filed for chapter 11 bankruptcy. JA-0001–14. In his court filings, he claimed that his only

assets were an "Apple iPhone" (unknown value), "casual business attire" (unknown value), a "Family Dog (Pomeranian)" (unknown value), $3,600 in aggregate "Covid Relief" checks, and $250 in tax refunds from the State of New York, along with possible unregistered copyrights (unknown value), and certain lawsuits where the Debtor is a plaintiff. JA-0038–41. In other words, the Debtor denied holding any interest in the *Lady May* or any other material assets, notwithstanding the New York Court's findings about his ownership and control of the *Lady May* specifically and his extraordinarily luxurious lifestyle more generally.

On March 1, 2022, PAX filed a motion in the Bankruptcy Court for relief from the automatic stay, seeking to permit a resumption of proceedings in the New York Action, including enforcement of the Final Contempt Decision (the "PAX Stay Motion"). JA-0015–34; JA-0759. The Debtor objected to the PAX Stay Motion, arguing that he did not own or control the *Lady May*. JA-1020, ¶ 13.

On April 10, 2022, the Debtor filed a proposed chapter 11 plan in the Bankruptcy Court pursuant to which HK USA allegedly agreed to donate the *Lady May* to a creditor's trust for the benefit of holders of allowed claims in exchange for the resolution of the Chapter 11 Case and

the issuance of broad releases for the Debtor and Appellants, among other parties. JA-0114–54.

On April 11, 2022, HK USA initiated the adversary proceeding (the "HK USA Adversary") from which this appeal arises by filing a Complaint against the Debtor and PAX, asserting the same argument it raised previously in the New York Action—*i.e.*, that HK USA is the owner of the *Lady May*. JA-0236. While the Debtor was ostensibly a defendant in the HK USA Adversary, in reality the Debtor supported HK USA's attempt to re-litigate Justice Ostrager's Final Contempt Decision.

## VIII. *Lady May* Stipulation and Purported $37 Million Loan

On April 11, 2022, the same day it commenced the Adversary Proceeding, in an effort to avoid the lifting of the automatic stay pursuant to the PAX Stay Motion, HK USA filed a statement (the "HK USA Statement"). SA-051; JA-0155–64. Therein, HK USA said it would consent to the entry of a proposed order compelling HK USA to transport and deliver the *Lady May* back to Connecticut from Europe. *Id.* HK USA's counsel reiterated this offer at a hearing in connection with the PAX Stay Motion on April 13, 2022 (the "April 13 Hearing"), at which HK USA argued in opposition to the PAX Stay Motion. JA-0819–20.

Following HK USA's counsel's argument at the April 13 Hearing, the Bankruptcy Court asked HK USA's counsel a number of questions regarding HK USA's proposal, including "why don't you just post a bond [to secure the yacht's return]?" SA-051, ¶ 19. Thereafter, following a 62-minute recess, counsel to the Debtor reported that "the owner of the boat intends and is committed then instead to post cash equal to the cost of the boat, about $37 million." SA-051, ¶ 20.

The Debtor, PAX, and certain other parties later reached an agreement to settle the PAX Stay Motion. JA-0165–73. Under the agreement, HK USA was obligated to return the *Lady May* to Connecticut, with such obligation to be secured by the deposit of $37 million into escrow by HK USA (the "Escrowed Funds"), to be released back to HK USA upon the satisfaction of certain conditions. JA-0168–69.

The proposed agreement was announced to the Court at an April 2022 hearing and memorialized in a stipulated order submitted to the Bankruptcy Court on April 29, 2022 (the "Lady May Stipulation"). SA-052, ¶ 23. The Bankruptcy Court entered an order approving the Lady May Stipulation the same day, without notice to creditors. JA-0165–93.

19

The Lady May Stipulation was entered into during the pendency of a motion by the United States Trustee to appoint an examiner or chapter 11 trustee in the Chapter 11 Case. SA-052, ¶ 25. Debtor's counsel acknowledged the possibility that a chapter 11 trustee might be appointed during the April 13 Hearing. JA-0815, pp. 21–22, 24; JA-0816, p. 25; JA-0818, p. 36. The Lady May Stipulation did not, however, provide that it would be binding on a subsequently appointed trustee. SA-052, ¶ 26; JA-0171–72.

HK USA asserted that it obtained the Escrowed Funds under the Lady May Stipulation pursuant to a purported loan extended to HK USA by a BVI-registered entity called Himalaya International Financial Group Ltd. ("Himalaya Financial"). JA-1024. Ms. Guo testified that she obtained the loan by calling "William" Kin Ming Je, whom she refers to as "Uncle William," and asking him for the money. *In re Kwok*, Bankr. D. Conn. No. 22-50073, Mei Guo Deposition Transcript, 01/20/2023, ECF No. 1529, 3/9/2023, at pp. 188–89. "Uncle William" is an international fugitive who was indicted alongside the Debtor on fraud and conspiracy charges in the Debtor's criminal case. *See United States v. Wang*, 2023 WL 4551637, at *2 (S.D.N.Y., 2023) (observing, at that point, that Je was

"still at large"). The Bankruptcy Court had previously found in a separate adversary proceeding that the Debtor is the leader of the "Himalaya" entities. JA-1129–30.

## IX. Trustee's Counterclaims in HK USA Adversary

By virtue of his appointment in July 2022, the Trustee replaced the Debtor as defendant in the HK USA Adversary.

On September 23, 2022, the Trustee filed his Answer and Counterclaims against both HK USA and Ms. Guo (who was not previously a party to the HK USA Adversary). JA-0238–307. The Trustee's First Counterclaim sought a ruling pursuant to 11 U.S.C. §§ 541 and 542 declaring that the *Lady May* is property of the Debtor's chapter 11 estate based on the doctrine of collateral estoppel because the issue of the Debtor's ownership interest in the *Lady May* had already been decided in the New York Action. JA-0295–97. The Trustee's Second Counterclaim sought a ruling pursuant to 11 U.S.C. §§ 541, 542, and 544 declaring that all of HK USA's property, including the *Lady May* and the Escrowed Funds, is property of the Debtor's chapter 11 on the grounds that HK USA, a Delaware LLC, is an alter ego of the Debtor under Delaware law. JA-0297–99.

21

**X.** **The Bankruptcy Court grants Trustee's Motion for Partial Summary Judgment on First Counterclaim.**

On March 19, 2023, the Trustee moved for partial summary judgment on the First Counterclaim (the "First Partial MSJ"). JA-0372; JA-0400–604. HK USA objected to the First Partial MSJ on March 26, 2023. JA-0670. Ms. Guo did not object to the First Partial MSJ.

A hearing on the First Partial MSJ was held on March 27, 2023. SA-002. Following the hearing, the Bankruptcy Court entered the First SJ Order determining that Appellants are collaterally estopped from contesting the Debtor's beneficial ownership and control of the *Lady May* because that issue was necessarily decided in the Final Contempt Decision of the New York Action, where Appellants and the Debtor both argued that the *Lady May* belonged to HK USA, not the Debtor. SA-001–04; SA-021–035. The Bankruptcy Court considered, and rejected, Appellants' arguments that they lacked a full and fair opportunity to litigate the issue in the New York Action, including their claim that they had "minimal" involvement in the proceedings despite Ms. Guo testifying at the same and Mr. Vartan, while ostensibly acting as counsel for Appellants, filing the Vartan Affirmation in advance of the Final Contempt Hearing (asserting that HK USA owned the *Lady May*) and

22

defending four Debtor witnesses. SA-029–35. Ultimately, the Bankruptcy Court found that, based on the New York Court's findings, the *Lady May* is property of the Debtor's chapter 11 estate. SA-003.

After the entry of the First SJ Order, the Trustee discovered that HK USA held title to another, smaller yacht, the *Lady May II*, despite the prior representations by Ms. Guo (under oath) and Appellants' counsel that the *Lady May* was HK USA's sole asset. JA-0201, ¶ 24; JA-0204–06; JA-0216–19; JA-0856, ¶¶ 2–7. In fact, at the Final Contempt Hearing, Ms. Guo had testified that her brother owned the *Lady May II*. JA-0528, at pp. 71–72. On March 31, 2023, after the Trustee's discovery of HK USA's ownership of the *Lady May II*, the Bankruptcy Court entered an amendment to the First SJ Order, providing that the *Lady May II* is also property of the estate. SA-036–38.

## XI. The Bankruptcy Court grants Trustee's Motion for Partial Summary Judgment on Second Counterclaim

On April 3, 2023, the Trustee moved for partial summary judgment on the Second Counterclaim (the "Second Partial MSJ"). JA-0750. On April 14, 2023, HK USA objected to the Second Partial MSJ. JA-0983–1013. Ms. Guo did not object to the Second Partial MSJ.

23

On May 18, 2023, the Bankruptcy Court issued the Second SJ Order granting the Second Partial MSJ. SA-039–75. Therein, the Bankruptcy Court determined from the undisputed facts and the First SJ Order that HK USA is the Debtor's alter-ego as a matter of law. SA-057–74. As part of its decision, the Bankruptcy Court determined that the Trustee had prudential standing to assert the Second Counterclaim pursuant to 11 U.S.C. § 544. SA-047. In support of that determination, it incorporated by reference its prior decision denying Appellants' motion to dismiss, among other things, the Trustee's Second Counterclaim, *In re Kwok*, No. 22-50073 (JAM), 2023 WL 2962662, (Bankr. D. Conn. Apr. 14, 2023) (the "Decision Denying Dismissal"). SA-047.[4]

The Bankruptcy Court went on to conclude that, even without the First SJ Order, the undisputed facts independently established that the Debtor "beneficially owns and controls the *Lady May* and *Lady May II*,"

---

[4]In the Decision Denying Dismissal, the Bankruptcy Court determined that, pursuant to *Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991), the Trustee *lacked* prudential standing to maintain the Second Counterclaim pursuant to section 541 under an insider reverse veil-piercing theory. Decision Denying Dismissal, at *5. As discussed below, pursuant to Second Circuit precedent post-dating the Bankruptcy Court's decision, the Trustee *does* have standing to pursue the Second Counterclaim under section 541.

and that HK USA has no purpose other than holding title to the *Lady May* and *Lady May II*. SA-059–60. The Bankruptcy Court acknowledged that, "[w]hile assertions of dominion and control tend to be fact-heavy questions ill-suited for summary judgment, this is a case where two of the five domination factors are established on *admitted* facts." SA-060 (emphasis in original). The Bankruptcy Court also observed that a third domination factor was established on undisputed facts. *Id.*

The Bankruptcy Court also determined that the undisputed facts established that Ms. Guo, HK USA's purported "owner," has no legitimate expectation of use or control of the *Lady May*, the *Lady May II*, or the Escrowed Funds despite her personal guaranty of the purported loan HK USA used to obtain the latter. SA-065–66. Regarding her guaranty, the Bankruptcy Court concluded from the undisputed facts that Ms. Guo knew or should have known that she guaranteed a loan to an entity whose only asset was (1) subject to an ownership dispute, (2) already found by the New York court to be beneficially owned and controlled by the Debtor, and (3) intended to be transferred to the chapter 11 estate and sold for the benefit of the Debtor's creditors. SA-065.

25

Finally, the Bankruptcy Court determined that the Trustee is not bound by the Stipulated Delivery Order because HK USA is the Debtor's alter-ego, and a party cannot contract with itself. For those reasons, the Bankruptcy Court concluded that, as between the Debtor and HK USA, the Stipulated Delivery Order is void *ab initio*. SA-068–69.

The Bankruptcy Court ultimately held in the Second SJ Order that (i) no genuine issue of material fact exists that HK USA "is and was at all relevant times the alter ego of [the Debtor];" (ii) "all property of HK USA at all relevant times to the present, including . . . the Escrowed Funds constituted and constitute, as applicable, property of the [Debtor's estate];" and (iii) Appellants "shall deliver all property of HK USA to [the Trustee]." SA-073–74.

## XII. The District Court Appeal and Affirmance

Appellants separately appealed the First SJ Order and Second SJ Order to the United States District Court for the District of Connecticut (the "District Court"), where the appeals were consolidated for review. SA-076, n. 1. The District Court affirmed. SA-076–91.

The District Court addressed the Second SJ Order first because it determined that the issues in the Second SJ Order—including its alter-

ego determination without reliance on the First SJ Order—made it unnecessary to decide the correctness of the First SJ Order, though the District Court ultimately affirmed the First SJ Order as well. Specifically, it held that the Second SJ Order "stands independent of the collateral estoppel finding and that the collateral estoppel finding is not necessary to the alter ego determination." SA-086. The District Court then identified the following undisputed facts as significant to its conclusion that HK USA was the Debtor's alter ego:

- HK USA has no business purpose other than owning the *Lady May* and the *Lady May II*;

- HK USA has generated no revenue, has had no directors, officers, or employees, has not filed tax returns, has had no bank account and has not otherwise been capitalized; yet operates and maintains the *Lady May* at a cost of approximately $100,000 per month;

- HK USA has maintained no documents or business records other than those that relate to the operation of the *Lady May*. And there was undisputed testimony that the Debtor, and not Ms. Guo, had the benefit of the use of the *Lady May*;

- As discussed above, the Debtor leveraged the *Lady May* as an asset in support of the proposed plan of reorganization at the inception of his bankruptcy case;

- HK USA shared office space with the Debtor's counsel, the Kwok family's office controlled by the Debtor's son, a property holding company controlled by the Debtor's wife, and other business entities tied to the Debtor. Finally, the Debtor and

27

HK USA utilized the same address, which was listed on the Debtor's chapter 11 petition.

SA-086–87. In addition, the District Court observed that Ms. Guo was "apparently unaware that HK USA owned the *Lady May II* and she believed that her brother owned the *Lady May II*, thus bolstering the conclusion that the Individual Debtor, not Ms. Guo, exercised dominion and control over HK USA." SA-087. The District Court rejected Appellants' argument that "a documented direct relationship between the . . . Debtor and HK USA, such as that of a wholly owned subsidiary, is necessary to establish alter ego status." SA-087. It instead held, citing case law, that Delaware law contains no such limitation and is more flexible than Appellants suggest. SA-087–88.

Having determined that the undisputed facts established that HK USA was an alter ego of the Debtor without need to resort to a collateral estoppel analysis, the District Court concluded that Appellants' challenge to the First SJ Order was moot. SA-081, n.2; SA-084. In the alternative, the District Court found that the First SJ Order "correctly held that the Appellants are collaterally estopped from contesting that the . . . Debtor is the beneficial owner of the *Lady May*." SA-088.

28

In reaching this conclusion, the District Court observed that Appellants' challenge to the First SJ Order was predicated upon a thinly veiled attempt to improperly "narrow the scope of the New York Appellate Division's remand, thereby narrowing the preclusive effect of the decision which followed," SA-089, as well as Appellants' efforts to "inaccurately" minimize "the extent to which they participated in the proceedings in the New York Supreme Court, as well as the nature and breadth of the proceeding." *Id.* The District Court affirmed the Bankruptcy Court's determination that the issue of ownership of the *Lady May* was necessarily decided in the Final Contempt Decision. It also rejected Appellants' argument to the contrary as "belied by the record," referring to the plain language of remand from the Appellate Division and the findings in the Final Contempt Decision. According to the District Court, "[t]here simply was no mystery as to the nature of the factual determinations to be made. The Appellate Division could not have been clearer." *Id.*

In addition, the District Court independently analyzed the record and determined "that there is no genuine issue of material fact that Appellants were afforded a full and fair opportunity to litigate the issue

29

of the ownership of the *Lady May*." <u>SA-089–90</u>. The District Court set forth the various undisputed facts establishing that Appellants participated in the New York Action, their alignment with the Debtor, and that Appellants "were able to participate in the fact-finding process, and did so" at the Final Contempt Hearing. <u>*Id.*</u> For that reason, among others, it "alternatively affirmed" the First SJ Order.

In the course of its decision, the District Court referenced in passing the Trustee's standing to bring the Second Counterclaim, even though Appellants had not raised that issue in their appeal.[5] In doing so, the District Court inadvertently referred to 11 U.S.C. § 541 and insider reverse veil-piercing—as opposed to 11 U.S.C. § 544 and outsider reverse veil-piercing—as the basis for the Trustee's standing to bring the Second Counterclaim. <u>SA-084–85</u>. The Bankruptcy Court had determined the Trustee had standing to maintain the Second Counterclaim under 11 U.S.C. § 544 based on outsider reverse veil-piercing.

## **STANDARD OF REVIEW**

---

[5] Appellants' District Court Brief is not in the Joint Appendix but, with reference to the underlying District Court docket in D. Conn., No. 3:23-cv-458 (KAD), it appears at ECF No. 48 and is dated August 2, 2023.

"When a bankruptcy appeal reaches [this Court] after district court review of the bankruptcy court order, [this Court's] review of the bankruptcy court order is plenary." *In re N. New England Tel. Operations LLC*, 795 F.3d 343, 346 (2d Cir. 2015). This Court conducts *de novo* review of orders granting summary judgment. *Picard Trustee for SIPA Liquidation of Bernard L. Madoff Investment Securities LLC v. JABA Associates LP*, 49 F.4th 170, 182–83 (2d Cir. 2022).

## SUMMARY OF ARGUMENT

For largely the same reasons set forth in the District Court's decision, this Court should affirm the Bankruptcy Court's First and Second SJ Orders.

*First*, the Bankruptcy Court properly found that HK USA was the Debtor's alter ego based upon a robust record of admitted and undisputed facts. These facts established, among other things, that HK USA was undercapitalized, that it did not observe corporate formalities, that it shared office space with the Debtor and various Debtor-affiliated entities (including his counsel), that the Debtor listed HK USA's address as his address on his chapter 11 petition, and that it has never in its history done anything other than serve as the nominal owner of the *Lady May*

31

and *Lady May II*, two yachts owned and controlled by the Debtor. The Bankruptcy Court appropriately analyzed such facts through the lens of the multi-factorial analysis called for by Delaware law and determined there was no genuine issue of material fact that HK USA is the Debtor's alter-ego. In doing so, it determined, independent of the First SJ Order, that the undisputed facts established that the Debtor beneficially owned and controlled the *Lady May* and *Lady May II*.

Appellants failed to raise any genuine issue of material fact to the contrary. Instead, they argued without support, as they do here, that an entity can never be the alter ego of a non-shareholder. Delaware law is to the contrary, as it looks beyond nominal ownership and focuses on the party actually exercising dominion and control. Appellants also argued, as they do here, that there are various strawmen "disputed facts." But their "disputed facts" are either not material, not genuinely disputed, or both. At bottom, Appellants do not present any cognizable basis for reversing the Bankruptcy Court's Second SJ Order.

*Second*, to the extent that the Court reaches this issue, the First SJ Order should also be affirmed. The Bankruptcy Court correctly analyzed the collateral estoppel doctrine under New York Law and determined

32

that there was an identity of issues between the New York Action and the HK USA Adversary—ownership and control of the *Lady May*—and that the New York Court actually and necessarily decided that issue in the Final Contempt Decision, as it was expressly directed to do by the Appellate Division. The Bankruptcy Court also properly determined that there was no genuine issue of material fact that Appellants had a full and fair opportunity to litigate the ownership issue in the New York Action.

Despite Appellants' attempts to muddy the waters, the record plainly established that Appellants both (i) shared the same interests as, and were in privity with, the Debtor, and (ii) participated extensively in the New York Action, including by presenting the testimony of multiple witnesses, including Ms. Guo, in support of their argument that she owns HK USA and that HK USA owns the *Lady May*. The Bankruptcy Court thus correctly determined that Appellants are bound by the Final Contempt Decision under collateral estoppel.

For those reasons, as more fully set out herein, the Second SJ Order and, if necessary, the First SJ Order should be affirmed in all respects.

**ARGUMENT**

33

**I.** **The District Court properly affirmed the Bankruptcy Court order entering summary judgment on the Trustee's second counterclaim that HK USA is the Debtor's alter-ego.**

    **A.** **Appellants' argument that the Trustee lacks "standing" to maintain the Second Counterclaim has been waived and, in any event, lacks merit.**

As an initial matter, this Court should decline to consider Appellants' claim that the Trustee lacks "standing" to assert the Second Counterclaim because Appellants have waived it.

Appellants' District Court Brief was devoid of *any* claim regarding the Trustee's standing to maintain the Second Counterclaim. Appellants' District Court Brief, at 23–59. Specifically, they did not challenge the Bankruptcy Court's determination, incorporated by reference into the Second SJ Order, that the Trustee had standing to maintain the Second Counterclaim pursuant to 11 U.SC. § 544(a), and the District Court did not address the issue. The argument has thus been waived. *See In re Reyes-Colon*, 922 F.3d 13, 18 (1st Cir. 2019) (observing that "[a]t least two circuits have held that the losing party in the bankruptcy court cannot raise on appeal to the circuit court arguments not presented to the district court on intermediate review") (citing *In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007) and *United States v. Olson*, 4 F.3d 562, 567 (8th Cir. 1993)); *cf. Truck Drivers Loc. 807, Int'l Bhd. of Teamsters,*

34

*Chauffeurs, Warehousemen & Helpers of Am. v. Carey Transp. Inc.*, 816 F.2d 82, 90 (2d Cir. 1987) (argument waived where not raised in bankruptcy court or in district court on intermediate appeal).

Appellants cannot avoid waiver by contending their argument is jurisdictional in nature. Despite its "standing" moniker, Appellants' argument does not implicate subject-matter jurisdiction. The Trustee's ability to pursue the alter ego claim under 11 U.SC. § 544(a) implicates a concept formerly known as "statutory standing" which, as this Court has held, is not really "standing" at all. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). Because a claim challenging a party's "prudential" or "statutory" standing does not implicate the Court's subject matter jurisdiction, it can be waived. *June Med. Servs. L. L. C. v. Russo*, 591 U.S. 299, 316–17 (2020) (recognizing that prudential "standing" argument can be "forfeited or waived"), abrogated on other grounds by *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

35

With those principles in mind, this Court should decline to review Appellants' claim that the Trustee lacks standing to maintain the Second Counterclaim under section 544 because that claim has been waived.

### B. Trustee has "standing" to assert a reverse veil-piercing claim under 11 U.S.C. § 544(a).

If not waived, this Court should reject Appellants' claim that the Trustee lacks "standing" to maintain the Second Counterclaim under 11 U.S.C. § 544(a) for the same reasons articulated by the Bankruptcy Court in the Second SJ Decision. SA-047. The Court should separately conclude that the Trustee may bring the claim under 11 U.S.C. § 541.

Section 544(a) provides in relevant part that a bankruptcy trustee shall have all "the rights and powers of . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains . . . a judicial lien on all property on which a creditor on simple contract could have obtained such a judicial lien." 11 U.S.C. § 544(a)(1). As the Bankruptcy Court recognized, consistent with this statutory language, a trustee may assert on behalf of the estate generalized claims common to all of a debtor's creditors, as opposed to particularized claims addressing injury to only certain creditors. *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700–01 (2d Cir. 1989) ("If a claim

36

is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."); *see also Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987) (trustee could pursue alter ego claims under section 544 where there was generalized rather than particularized harm to creditors because, under that provision, trustee is "the representative of the general creditors"); *Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan)*, 415 B.R. 29 (D. Conn. 2009) (relying on *PepsiCo*, recognizing that trustee may pursue alter ego claim on behalf of creditors under section 544(a)).

In addition, the Trustee has the authority to pursue the alter ego claim under 11 U.S.C. § 541. Although the Bankruptcy Court originally held that this Court's decision in *Wagoner*, 944 F.2d 114, would bar the Trustee from pursuing his alter ego claim under section 541 while standing in the shoes of the Debtor,[6] it reached that conclusion before this

---

[6]As the Bankruptcy Court recognized, *Wagoner* and the related doctrine of *in pari delicto* would not apply to the Trustee's claim as brought under section 544(a). *See Wells Fargo Bank, N.A. v. First Republic Bank (In re Salander)*, 503 B.R. 559, 569 n. 12 (S.D.N.Y. 2013).

37

Court's decision in *Stadtmaurer v. Tulis (In re Nordlicht)*, 115 F.4th 90, 104 (2d Cir. 2024), which held that a trustee has standing to pursue outsider reverse veil-piercing claims under section 541.

In *Nordlicht*, like here, an individual debtor allegedly defrauded investors by accepting their money and secreting it away to family members and offshore shell entities. *Id.* at 107–08. Before the individual debtor filed for bankruptcy, a creditor who had recently obtained an arbitral award against the debtor brought a reverse-veil piercing alter ego action of the same kind the Trustee asserted in this case. After the individual debtor filed for bankruptcy, the trustee settled the claim on behalf of the estate. *Id.* at 100. The issue for this Court was whether the alter ego action was an estate claim that only the trustee (as opposed to the creditor) could settle. This Court held that it *was* an estate claim because it was a generalized claim based upon conduct that "defrauded . . . all of [the debtor's] creditors and business partners" equally, *id.* at 108, and thus the claim was "property of the estate" under 11 U.S.C. § 541.

Here, as in *Nordlicht*, the Trustee has standing to pursue his reverse veil-piercing claims (and his beneficial ownership claims) under section 541 because those claims are property of the estate. Moreover,

because the Trustee is *stepping into the shoes of the Debtor's creditors* in asserting the claims, the *Wagoner* rule and the *in pari delicto* defense are inapplicable. *See In re Harman*, 529 B.R. 352, 357 (Bankr. N.D. Ga. 2015) ("The defense of *in pari delicto* is not applicable here. As discussed above, binding 11th Circuit precedent informs that Trustee has authority under 11 U.S.C. § 541 to bring alter ego claims which could be brought by Debtor's creditors. . . . The doctrine of *in pari delicto* would not apply to Debtor's creditors; therefore, it should not apply to Trustee.").[7]

The authorities that Appellants rely on are distinguishable. In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), the trustee sought standing to assert particularized creditor claims—those of debenture holders—not general claims for the benefit of all creditors, against an indenture trustee. *Id.* at 430–31. Similarly, the trustee in *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (S.D.N.Y. 2011) sought to

---

[7]The Bankruptcy Court itself recognized in a footnote that, prior to *Nordlicht*, the Third Circuit had held that generalized claims of creditors, such as alter ego claims, were property of the estate, which meant a trustee could bring such claims in the Third Circuit notwithstanding an *in pari delicto*-style defense. *See* Decision Denying Dismissal at 15, n. 6. Thus, the Bankruptcy Court would agree that, under *Nordlicht*, the Trustee now has standing to pursue his reverse veil-piercing claim under section 541.

pursue individualized claims held by customers of BLMIS against third-party financial institutions arising from customers' individual investments. *Id.* at 95 (finding trustee lacked standing to "pursue claims that belong individually to the creditors").

At bottom, the law in this Circuit makes clear that the Trustee may properly assert the Second Counterclaim under section 544(a) or section 541, and through either medium the *Wagoner* doctrine and *in pari delicto* are inapposite because the claim is brought as a general claim of creditors, not a claim held by the Debtor. Accordingly, Appellants' standing arguments, if not waived, should be rejected.

**C.** **The Bankruptcy Court properly found no genuine dispute of material fact as to Trustee's Second Counterclaim that HK USA is Debtor's alter-ego.**

The Bankruptcy Court correctly determined in the Second SJ Order that there was no genuine issue of material fact that HK USA is the Debtor's alter-ego. SA-054–73. The District Court properly affirmed the Second SJ Order concluding, among other things, that there was no genuine issue of material fact that the Debtor and HK USA "operated as a single economic entity." SA-088; SA-076–90. As the District Court explained in its decision, the Bankruptcy Court relied upon a robust

record of admitted and undisputed facts establishing, *independent of the First SJ Order*, that the Trustee was entitled to summary judgment on the Second Counterclaim.  SA-047–52; SA-084–88.

Appellants' arguments seeking reversal of the Second SJ Order, which the Trustee fully addresses below, are without merit.  This Court, therefore, should affirm the Second SJ Order.

## 1. Legal principles governing Second Counterclaim.

Veil-piercing under Delaware law has two elements: (a) the entity is under the dominion and control of the defendant such that it is a mere instrumentality rather than a separate economic entity, and (b) an overall element of fraud or injustice is caused by the corporate structure. *See Universitas Education, LLC v. Benistar,* No. 3:20-cv-00738 (JAM), 2021 WL 965794, at *9 (D. Conn. Mar. 15, 2021) (denying motion to dismiss reverse veil-piercing alter-ego claim under Delaware law).

"Some combination" of the following five factors may be used to establish the "dominion and control" or "instrumentality" element:

> [1] [W]hether the corporation was adequately capitalized for the corporate undertaking; [2] whether the corporation was solvent; [3] whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; [4] whether the

41

dominant shareholder siphoned corporate funds; and [5] whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (cleaned up).

Where reverse veil-piercing is at issue, courts may consider various additional factors, as set forth in *Manichaean Capital, LLC v. Exela Techs., Inc.,* 251 A.3d 694 (Del. Ch. 2021) ("*Manichaean*"). They include factors relating to, among other things, the extent to which "the public convenience as articulated by [the Delaware General Corporation Law and Delaware's common law], would be served by allowing a reverse pierce," and the effect that reverse-veil piercing may have on innocent parties. *Id.* at 715. Because "fundamentally, reverse veil-piercing, like traditional veil-piercing, is rooted in equity, the court must consider all relevant factors . . . to reach an equitable result." *Id.* (cleaned up).

### 2. Direct relationship between Debtor and HK USA is not necessary for reverse veil-piercing under Delaware Law.

Appellants contend that the Bankruptcy Court erred in entering the Second SJ Order because the Debtor is not a nominal "owner" of HK USA and "Delaware law does not permit reverse-veil piercing HK USA

42

based on the liability" of the Debtor. Brief, at 40–41. They specifically contend that *Manichaean* "expressly applies the doctrine of reverse-veil piercing only to 'owners' of a business organization." Brief, at 41. Not so.

As the District Court explained:

> *Manichaean* contains no such limitation . . . and makes clear that a broader factorial analysis is required. Further, although such a direct relationship may be persuasive evidence on the issue of whether an entity is the alter ego of an individual, Delaware law in this regard is more flexible than Appellants posit.

SA-087–88 (citing *In re Buckhead Am. Corp.*, 178 B.R. 956, 975 (D. Del. 1994)). Under Delaware law, "[t]he purpose of allowing the corporate veil to be pierced on an alter ego theory is to hold *the party actually responsible for the inequitable conduct accountable*" and to prevent one from using another to shield itself from liability. *Official Comm. of Unsecured Creditors v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 365 (Bankr. S.D.N.Y. 2002) (applying Delaware law).

Accordingly, whether the "party actually responsible" is the nominal owner of its alleged alter ego entity is not determinative. What is determinative is whether such responsible party exercised dominion and control over such entity for the purpose of perpetuating a fraud or injustice on others. To hold otherwise would exalt form over substance

43

and lead to inequitable results, permitting the use of "corporate intermediaries and other complex business structures" as means of "indirectly doing that which lawfully cannot be accomplished directly." *In re Buckhead Am. Corp.*, 178 B.R. at 975. This Court, therefore, should reject Appellants' argument that reverse veil-piercing does not lie simply because the "Debtor is not an owner of HK USA."

> ### 3. The Bankruptcy Court correctly determined the absence of a genuine dispute as to any material fact regarding the "traditional alter-ego factors"

The Bankruptcy Court set forth numerous admitted and undisputed facts supporting its determination that the Trustee established three of the five traditional "dominion and control" or "instrumentality" factors under Delaware law—(i) HK USA was undercapitalized for its undertaking, (ii) it did not observe corporate formalities, and (iii) it simply functioned as a façade for the Debtor. SA-057–61; SA-086–87; *Manichaean*, 251 A.3d at 706–07.

*First,* the Bankruptcy Court correctly relied on *admitted* facts to determine that the Trustee satisfied his burden with respect to the undercapitalization and failure to observe corporate formalities factors. SA-059–60. Specifically, Appellants admitted below that HK USA at all

relevant times generated no revenue; had no directors, officers, or employees; has never filed tax returns; had no bank accounts and had not otherwise been capitalized; and maintained no documents other than those relating to the *Lady May*. SA-057; SA-058–61. "By HK USA's own admissions, the operation and maintenance of the *Lady May* costs more than $100,000 per month," yet it has "no income, generates no income, and has no liquid assets." SA-058.

*Second*, the Bankruptcy Court properly relied on other undisputed facts to determine that the Trustee satisfied his burden with respect to the façade factor, specifically that the Debtor beneficially owns and controls the *Lady May* and *Lady May II,* and that HK USA has no other business purpose other than holding assets beneficially owned and controlled by the Debtor. SA-059–61. These undisputed facts included Ms. Guo's affirmations of former captains and managers of the *Lady May* who stated "overwhelmingly" that the Debtor had the benefit of use of the *Lady May*, the fact that the Lady May Stipulation was intended, ultimately, to benefit the Debtor, the fact that HK USA shared/shares office space with Debtor's counsel and several other entities affiliated

with the Debtor, and the fact that the Debtor himself listed HK USA's address as his address on his chapter 11 petition. SA-059–60.

Based on these admitted and undisputed facts, the Bankruptcy Court properly concluded that no genuinely disputed issue of material fact existed as to three of the five traditional veil-piercing factors under Delaware law, which "combination" of factors sufficed to establish as a matter of law that the Debtor dominated and controlled HK USA. *Manichaean*, 251 A.3d 707; SA-061.

Appellants contend in response to this evidence that "reasonable minds certainly could differ" as to the "import" of the evidence. Brief, 45. But they do not explain *how* or *why* "reasonable minds could differ," and mere disagreement with the Trustee's evidence is insufficient to defeat summary judgment. *See Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("[a] party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory . . . or based on speculation"). Appellants were required to submit contrary evidence to create a genuine dispute of material fact, and this they failed to do.

46

Notably, Appellants did not present any evidence to show that HK USA had some business purpose other than holding title to and operating the *Lady May* and *Lady May II*, which the Bankruptcy Court recognized was apparently the only purpose for which HK USA existed. SA-060. Although Appellants assert that there "were numerous counter-facts evidencing the bona fides of HK USA's existence," Brief, at 45, their only citation in support of this statement is to JA-0800, which is a page from an affidavit of Ms. Guo submitted in the New York Action supporting the proposition that HK USA "was not required to have a bank account and actually made arrangements for the management of the *Lady May* and the payment of all of its expenses." Brief, at 45. This citation misses the point because Appellants do not purport to refute that the "arrangements" to which they refer were made *with the Debtor or one of his shell companies*. The fact is, Appellants admitted that HK USA did not maintain a bank account, have any income, or generate any income despite having its own expenses, namely, at least $100,000 per month to maintain and operate the *Lady May*. SA-058–59. At the same time, Appellants proffered no evidence suggesting that someone other than the Debtor or Debtor-linked entities provided such funds.

47

Appellants' assertions regarding Ms. Guo's purported ownership of HK USA's main asset, the *Lady May*, are likewise unsupported by the record. Appellants contend they submitted evidence "establishing" that Ms. Guo's brother purchased the *Lady May* for her, Brief, at 48, but this "evidence" was refuted by Ms. Guo herself in the New York Action when she testified that her brother was not involved in the transfers leading to her supposed acquisition of the *Lady May*. JA-0522, at pp. 46–47.

The reason Appellants were unable to submit evidence of Ms. Guo's purported ownership and control of HK USA is that she has none. This much is evident from the circumstances surrounding the *Lady May II*, which dispel any notion that Ms. Guo, and not the Debtor, owns and controls HK USA. As the Bankruptcy Court observed, Appellants originally made multiple sworn statements in which they stated that the *Lady May* was HK USA's only asset. SA-015–16. After entry of the First SJ Order, however, the Trustee discovered that HK USA also owned another yacht—the *Lady May II*—worth about $1 million. JA-0204–14; JA-0216–19. Despite her purported ownership and control of HK USA, Ms. Guo had no knowledge of HK USA owning the *Lady May II*—indeed, during the Final Contempt Hearing, she testified that her brother owned

the *Lady May II*.  JA-0528, pp. 71–72.  Clearly, Ms. Guo did not own HK USA if she was not even aware of its ownership of a second yacht.

Finally, Appellants' argument that the Bankruptcy Court improperly relied on the Debtor's proposed chapter 11 plan as evidence of the alter ego relationship also fails.  Brief, at 48–49.  While nothing in the chapter 11 plan was necessary to the Second SJ Order, the Bankruptcy Court was correct to recognize that Appellants' decision to donate the Lady May to the Debtor as part of the plan supports the conclusion that the Debtor is and always has been the true owner of HK USA and its assets.  Indeed, it is difficult to conceive of any reason why Appellants would gift such a valuable asset to the estate if the circumstances were otherwise.[8]

For those reasons, the Bankruptcy Court properly determined that there were no genuine issues of material fact regarding the traditional alter-ego factors under Delaware law.  SA-060–61.

---

[8]Appellants further argue that the Bankruptcy Court could not consider the plan because it was a "settlement offer."  Brief, at 49.  This argument fails.  Even if the plan could be considered a settlement offer, which it was not, it was an offer made by the Debtor, not Appellants, and nothing prevented the Bankruptcy Court from considering the plan when making its decision below.

**4. The Bankruptcy Court correctly determined that the absence of a genuine dispute as to any material fact regarding the fraud and similar injustice factor.**

"An ultimate decision regarding veil-piercing is largely based on some combination of [the traditional alter-ego] factors, in addition to an overall element of injustice or unfairness." *Manichaean*, 251 A.3d 707. "Acts intended to leave a debtor judgment proof are sufficient to show fraud and injustice." *Id.* at 708–09.

Here, the Bankruptcy Court accurately observed that HK USA was a closely held entity that only existed to hold the *Lady May* and *Lady May II*, and that HK USA was nominally held in the name of a relative of the Debtor (*i.e.,* his daughter, Ms. Guo), while the Debtor was the true beneficial owner of the *Lady May* and *Lady May II*. SA-060–61. Applying a "badges of fraud" analysis,[9] the Bankruptcy Court properly concluded on the undisputed facts "that HK USA's purpose is to prevent the . . . Debtor's creditors from executing a judgment entered against the . . . Debtor upon the *Lady May* and *Lady May II* and [that the facts] support the inference that it was the . . . Debtor's intent to do so." *Id.*

---

[9]The Bankruptcy Court correctly noted that this analysis did not require the Trustee to prove fraud. SA-061.

50

Indeed, shielding his assets from creditors is exactly what the Debtor was doing in the New York Action when he and Appellants litigated the Final Contempt Hearing. Justice Ostrager observed that "PAX encountered difficulty identifying assets over which Kwok exercised control because Kwok . . . had secreted his assets in a maze of corporate entities and with family members." JA-0546. He also observed that the Debtor made "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members." JA-0546.

Further supporting the Bankruptcy Court's determination on the "fraud or similar injustice" element was the Debtor's continuing strategy of using HK USA to conceal his assets after filing for bankruptcy. Shortly after the Debtor filed the Chapter 11 Case, Appellants commenced the HK USA Adversary—thereby teeing up a sham dispute as to the issue of the *Lady May's* ownership for the Debtor's own benefit so he could use the *Lady May* as consideration for creditors under his proposed chapter 11 plan. JA-0121–22; JA-0138; SA-051, ¶ 17. HK USA was later used to fund the Lady May Stipulation when the Debtor's Daughter asked William Je (a/k/a "Uncle William," the Debtor's alleged criminal co-

conspirator who has been indicted on fraud charges) for a $37 million loan—all in an effort to defeat PAX's motion for relief from the automatic stay. JA-1020–25, ¶¶ 14, 16–19, 26–27; SA-051, ¶¶ 18–21.

In summary, HK USA's actions at every turn benefited the Debtor and assisted him in his efforts to conceal and shield his assets from creditors. Although Appellants contend the Bankruptcy Court somehow drew improper inferences from these facts, in reality it drew the only plausible inference from them, which is that the Debtor used Appellants to hide his assets from creditors. If there is any reasonable inference that could have been drawn in favor of Appellants on these facts, they failed to identify it to the Bankruptcy Court, the District Court, or this Court. The Bankruptcy Court was thus correct in determining the absence of any genuine issue of material fact that the Debtor's use of HK USA as his alter ego resulted in fraud or similar injustice.

### 5. The Bankruptcy Court correctly determined that the absence of a genuine dispute as to any material fact regarding the legitimate expectations of Ms. Guo.

The Bankruptcy Court also properly recognized that, despite Ms. Guo's argument to the contrary, her alleged guarantee of the loan to HK USA did not raise a genuine issue of material fact regarding the

legitimate expectations of Ms. Guo or the purported lender on the loan, Himalaya Financial. Brief, at 51–56.

HK USA was the Debtor's alter ego at the time of the loan, and Ms. Guo's decision to guarantee the loan cannot change that fact. As the Bankruptcy Court correctly observed, Ms. Guo should have expected her personal guaranty to be called because she knew or should have known when entering into the guaranty that HK USA's sole asset (that she knew of—the *Lady May*) "was subject to an ownership dispute" and, with reference to the New York Action, "already found by one court to be beneficially owned and controlled" by the Debtor. SA-065. In addition, Ms. Guo also knew or should have known that the *Lady May* was to be transferred to the bankruptcy estate and sold for the benefit of the Debtor's creditors, which the Bankruptcy Court found "particularly concerning because HK USA admittedly has no source of revenue from which to pay any interest that accrued on the loan." *Id.*

In other words, because HK USA was and had always been a shell company, there can be no *genuine* dispute that Ms. Guo should have expected to be liable on the purported personal guaranty, and, thus, her expectations would not be upset by reverse veil-piercing under these

53

circumstances. This is especially so given that Ms. Guo's execution of the loan occurred *after* litigation regarding the Debtor's true ownership of the *Lady May* was already underway. Appellants cannot be permitted to alter the outcome of pending litigation through strategic actions they took during that litigation. For these reasons, the Bankruptcy Court properly determined that reverse veil-piercing would not harm Ms. Guo's legitimate expectations. SA-066.[10]

> **6. The Bankruptcy Court correctly determined that the public convenience factor favored reverse veil-piercing.**

The Bankruptcy Court likewise correctly concluded that the public interest factor supports summary judgment for the Trustee. Although Appellants contend that there were genuine issues of material fact regarding this factor, Brief, at 56–57, they did not raise that argument on appeal to the District Court; thus, it is waived. *See supra* at 34–36.

Even if not waived, Appellants' argument should be rejected. As the Bankruptcy Court observed, this factor involves consideration of "the

---

[10]Contrary to Appellants' assertions, the record below contained no evidence as to Himalaya Financial's expectations as HK USA's purported creditor. As noted above, the Bankruptcy Court has separately found that the Debtor is the leader of the "Himalaya" entities. JA-1129–30.

degree to which the public convenience, as articulated by the Delaware General Corporation Law and Delaware's common law, would be served by allowing a reverse pierce." *Manichaean*, 251 A.3d at 715. "The public convenience factor will require the balancing of the social value of upholding the legitimate expectations of the affected corporate creditors or debtors, applying a rebuttable presumption in favor of assuring such expectations, against the importance of the policies served by allowing a reverse pierce under the particular circumstances involved." *Id.*

The Bankruptcy Court properly determined that HK USA's corporate form works an injustice and has no business purpose other than holding the Lady May and Lady May II—"there is no going concern to protect." SA-066. It further determined that HK USA only serves to shield assets beneficially owned and controlled by the Debtor from his creditors. *Id.* Appellants do not argue that the Bankruptcy Court's analysis in this regard was incorrect. They instead complain, without elaboration, that they did "not receive the benefit of any rebuttable presumption" (referring to *Manichaean*). Irrespective of any such presumption, ample support existed for the Bankruptcy Court's conclusion that reverse veil-piercing would serve the public interest.

55

II. **The District Court properly affirmed the First SJ Order granting the chapter 11 estate ownership of the *Lady May* based on collateral estoppel**

As the District Court appropriately recognized, the effect of the Bankruptcy Court's ruling on the Second Counterclaim that HK USA is the Debtor's alter ego was to render all of HK USA's property, including the *Lady May*, property of the chapter 11 estate. Accordingly, if the Second SJ Order is affirmed, the appeal of the First SJ Order, which granted the estate ownership of the *Lady May* on the separate theory of collateral estoppel, becomes moot and need not be considered. To the extent the appeal of the First SJ Order is not moot, that order should be affirmed because the Bankruptcy Court correctly applied the doctrine of collateral estoppel on the record before it.

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 371 (2d Cir. 2023). No genuine dispute of material fact existed as to either of these elements.

56

**A.      The Bankruptcy Court correctly determined that there was no genuine issue of material fact that the New York Court necessarily decided the issue of ownership of the Lady May.**

For purposes of issue preclusion analysis under New York law, issues are "necessarily determined" if they are an "essential element of a finding." *Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Invs., LLC)*, 524 B.R. 62, 78 (Bankr. D. Del. 2015) (citing *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 666 (1990)). "Even factual issues that are only implicitly relied upon in reaching a decision can be given preclusive effect.  Similarly, factual issues are decisive if they tend to establish a claim." *Id.*

With those principles in mind, there can be no dispute that an identity of issues existed as between the litigation before the New York Court in the New York Action and the litigation before the Bankruptcy Court below.  To begin with, the Appellate Division's remand in the New York Action directed Justice Ostrager "to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties." SA-089.  Thus, as the District Court observed, the remand placed the issue of ownership and control of the *Lady May*, "indisputably the only asset (at the time)" and the "only

purpose for which" HK USA existed, "squarely before" Justice Ostrager. _Id._ On this record, the District Court properly noted, "there simply was no mystery as to the nature of the factual determinations to be made. The Appellate Division could not have been clearer." _Id._ Thus, there was "no question" that the Bankruptcy Court properly found no genuine issue of material fact that the issue of the Debtor's ownership and control of the _Lady May_ was necessarily decided by the Final Contempt Decision. _Id._ (citing _Evans v. Ottimo_, 469 F.3d 278, 281 (2d Cir. 2006)).

As they did in their appeal to the District Court, Appellants "seek to narrow the scope of the New York Appellate Division's remand, thereby narrowing the preclusive effect of the decision which followed." SA-089. Specifically, Appellants contend that the New York Court "only needed to decide that the . . . Debtor held _some_ beneficial interest and controlled the _Lady May_," Brief, at 21, and that "[f]inding that the . . . Debtor solely owned the _Lady May_ was not an essential element of entering a final order of contempt" against the Debtor. Brief, at 17–18. In their view, the New York Court did not decide the question whether the Debtor _solely_ owned and controlled the _Lady May_ because Justice

58

Ostrager stated that the Debtor "holds a beneficial interest in and controls the *Lady May*." Their argument should be rejected.

As observed by the District Court, Appellants' argument on this point is "belied by the record," SA-089, including Justice Ostrager's statement that "[p]ursuant to the Appellate Division's Order, [the New York Court] scheduled the February 2, 2022 evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the yacht." JA-0548. Justice Ostrager then proceeded to rule squarely against Appellants on the issue, finding (1) that, "[n]ot only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht;" SA-019–21, and (2) that the testimony of Ms. Guo that "she owns and controls the Lady May cannot be credited *in any respect*." SA-027 (emphasis added). Appellants do not address these determinations of the Final Contempt Decision and thus provide no cognizable basis upon which this Court could determine that Justice Ostrager decided something other than, or less than, the issue of the *Lady May's* ownership.

In addition, Appellants' argument fails because it is manifest from Appellants' conduct in the New York Action that they knew they were

59

litigating the issue of the *Lady May's* ownership. For example, HK USA filed (1) the Vartan Affirmation, which focused on the ownership question and sought to make the case that HK USA owned the *Lady May*, JA-0493–99, and (2) a declaration from Ms. Guo averring to the same assertions. JA-0556–62. Appellants also appeared, through counsel, at the Final Contempt Hearing, where they presented additional witnesses to support their position on the ownership issue. It was only after the New York Court determined that the Debtor owned the *Lady May* that Appellants suddenly adopted the position that the issue of ownership of the *Lady May* was not before the New York Court. Appellants' change in position is an obvious effort to justify re-litigating the ownership issue in connection with the Debtor's chapter 11 case.

At bottom, in the Final Contempt Decision, Justice Ostrager was not only directed to consider, but actually did consider and necessarily decide, the issue of the *Lady May's* ownership. He decided that the Debtor beneficially owned and control the *Lady May* and, in so doing, determined that the evidence presented by Appellants could not be credited in any respect. Had Justice Ostrager decided that Ms. Guo or

60

HK USA partially owned and controlled the Lady May, he would have made different findings regarding her testimony.

For those reasons, the Bankruptcy Court's analysis on the first prong of the collateral estoppel analysis was correct, and Appellants' arguments to the contrary should be rejected.

**B.** **The Bankruptcy Court correctly determined that there was no genuine issue of material fact that Appellants and the Debtor were in privity such that Appellants had a full and fair opportunity to litigate the issue of the Lady May's ownership in the New York Action.**

Under New York Law, a nonparty to a prior action is considered to have had a full and fair opportunity to litigate, and thus subject to collateral estoppel, when a nonparty is in privity with a party to the prior action. *Juan C. v. Cortines*, 89 N.Y.2d 659, 667–68 (1997). "In the context of collateral estoppel, a party in privity is one that had a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation." *Id.* at 667 (cleaned up). The concept of privity for collateral estoppel purposes "requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation,"

61

*Carol v. Madison Plaza Apartment Corp.*, No. 156730/13, 2014 WL 6471482, at \*3 (N.Y. Sup. Ct. Nov. 18, 2014), and revolves around the question whether a "nonparty's interests were adequately represented." *Pope v. Enzo Biochem, Inc.*, 432 F. App'x 7, 9-10 (2d Cir. 2011) (summary order) (applying New York law).

Appellants contend that the District Court did not "address the privity argument" they made below.  Brief, at 22, n. 2.  Appellants are wrong.  The District Court did address (and reject) their privity argument: "Although Appellants were not parties to the New York litigation, their alignment with the . . . Debtor's interests and effort to advance identical positions, *i.e.*, that HK USA, and not the . . . Debtor, was the owner (beneficial and otherwise) of the *Lady May*, render Appellants sufficiently in privity with the . . . Debtor to implicate collateral estoppel."  SA-089, n. 3 (citing *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970)).  Also salient to the privity issue, the District Court observed that "[c]ounsel for the . . . Debtor and Appellants were paid by the same company, [Golden Spring,] which has also been linked to the . . . Debtor."  SA-090.

62

For its part, the Bankruptcy Court soundly rejected as "not persuasive" Appellants' argument that they lacked privity with the Debtor. The Bankruptcy Court appropriately recognized that Appellants formed a unified front with the Debtor in jointly opposing the Final Contempt Motion by, among other things, filing the Vartan Affirmation, having Ms. Guo testify at the hearing, and having their counsel defend witnesses at the hearing. SA-033. Through these efforts, Appellants sought the exact same outcome as the Debtor: to prove that Ms. Guo, through HK USA, owned and controlled the *Lady May*. The Debtor desired this outcome to avoid being held in contempt of court and to prevent his yacht from potentially being seized by PAX. Appellants desired this outcome for the same reasons: ostensibly to maintain ownership of the *Lady May* and, in reality, for Ms. Guo to help her father avoid contempt sanctions and to keep the *Lady May* outside the reach of his creditors. While these common goals and the close familial relationship between the parties are alone enough to establish privity, the Debtor's counsel and Appellants' counsel were also paid by the same Debtor-linked shell company, *i.e.*, Golden Spring (which, as noted previously, has since been adjudged an alter-ego of the Debtor). *See, e.g.,*

*Coleman v. J.P. Morgan Chase Bank N.A.*, 136 N.Y.S.3d 911, 912 (App. Div. 2021) (affirming lower court's finding that a party was collaterally estopped from seeking quiet title to real property when "his interests [were] represented by his wife, who was a defendant in the prior foreclosure action"); SA-033; JA-0526–27, pp. 64–65; JA-0551; JA-0606–07.

The Debtor's conduct and statements in the chapter 11 case further confirmed his and Appellants' full alignment on the issue of the Lady May's ownership. In a declaration he submitted, the Debtor averred under oath that his daughter owns the *Lady May*. JA-0104. Similarly, the *Lady May* is nowhere to be found on the schedules of assets the Debtor filed with the Bankruptcy Court. JA-0035–57.

Notwithstanding the foregoing undisputed facts, Appellants seek to portray their interests as in "conflict" with those of the Debtor by arguing that they were concerned with defending their ownership interest in the *Lady May* while the Debtor was concerned with avoiding incarceration given that he asserted his Fifth Amendment rights. But the fact that the Debtor availed himself of the Fifth Amendment does not in any way change the interest he held in the outcome of the Final Contempt

64

Hearing—it merely reflects his chosen litigation strategy. Instead of offering his own testimony that he did not own the *Lady May*, which would have required the Debtor to prove a negative, he relied on the testimony of his daughter and several other witnesses, including the yacht's then-current and former captains (who were defended at the Final Contempt Hearing by Appellants' counsel), to prove that his daughter owned the yacht. The Debtor's invocation of his Fifth Amendment privilege in no way conflicts with his daughter's objectives, as she was also interested in preventing her father's incarceration.

Appellants' cognitive dissonance on the issue of their privity with the Debtor may best be reflected by the words of Appellants' and the Debtor's shared counsel in the underlying chapter 11 case. When the Bankruptcy Court asked counsel how they could simultaneously represent both the Debtor and Appellants free of any conflict of interest, counsel responded that their position was the same:

> [The Debtor's] position is that HK [USA] owns the boat so [the Debtor and HK USA] are not adverse. He does not believe that he owns the boat. He does not believe that it's property of the bankruptcy estate. I'll say that unequivocally on the record. So I don't see how they can be adverse if they take the same position.

65

JA-0573, p. 40, ¶¶ 2–8. Because the Debtor and Appellants admittedly had the *same* interest on the issue of ownership of the yacht, they were indisputably in privity on that issue.

Appellants' remaining disparate and passing contentions on the second prong of the collateral estoppel analysis should also be rejected. Brief, at 24–25. *First*, it is plain from the record that Appellants were not "simply witnesses" at the Final Contempt Hearing, and Appellants do not address the analysis (and rejection) of this argument by both the Bankruptcy Court and the District Court. *Compare* Brief, at 24 *with* SA-033 and SA-089–90. The undisputed facts establish that Appellants were engaged in a calculated and coordinated effort with the Debtor beginning in October 2020, when they found themselves subject to the restraining order of the New York Court and continuing through 2021, when Appellants' counsel submitted a declaration (ostensibly for Appellants) in conjunction with the Debtor's objection to the Final Contempt Motion, SA-033, and at the Final Contempt Hearing itself, where Ms. Guo testified and Appellants' counsel defended four of the five witnesses *for the Debtor*. Id. *Second*, Appellants' argument that they "lacked appellate rights" with respect to the Final Contempt Decision is unsupported by

the record.    As the Bankruptcy Court appropriately recognized, Appellants themselves prevented any appeal from the Final Contempt Decision by opposing PAX's request in the Bankruptcy Court for relief from the automatic stay to continue the New York Action.  SA-034.

Accordingly, in the event the Court considers the First SJ Order, on the basis of the foregoing, it should be affirmed.

## CONCLUSION

On the basis of the foregoing, the Trustee respectfully submits that this Court should affirm the judgment of the District Court, which affirmed the judgment of the Bankruptcy Court, in all respects.

Dated: April 3, 2025
New Haven, Connecticut

Respectfully Submitted,
APPELLEE, LUC A. DESPINS,
CHAPTER 11 TRUSTEE

By: /s/ Dennis M. Carnelli
Dennis M. Carnelli
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
T:    (203) 821-2000
F:    (203) 821-2008
dcarnelli@npmlaw.com
HIS ATTORNEYS

68

## CERTIFICATE OF COMPLIANCE PURSUANT TO F.R.A.P. 32

1.      This brief complies with the type-volume limitation of  Local Rule 32.1(a)(4)(A) (made applicable by Fed. R. App. P. 32(e)) because, excluding the items exempted by Fed. R. App. P. 32(f), it contains 13,982 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface Century Schoolbook font using Microsoft Word in size 14 set in plain, roman style.

Dated April 3, 2025
New Haven, Connecticut

/s/ Dennis M. Carnelli
Dennis M. Carnelli
*Counsel for the Chapter 11 Trustee*